Shawn A. Williams (Cal. Bar Id. 213113)
**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Tel.: (415) 288-4545
Fax: (415) 288-4534
Email: shawnw@rgrdlaw.com

[Additional counsel appear below]

*Counsel for Lead Plaintiffs and Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| BEN BROWNBACK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLOVIN CORPORATION, et al.,<br><br>Defendants. | Case No. 4:25-cv-02772-HSG<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE<br><br>DATE:  March 12, 2026<br>TIME:  2:00 p.m.<br>CTRM:  2, 4th Floor<br>JUDGE:  Honorable Haywood S. Gilliam, Jr. |

4925-0449-6774.v1

Lead Plaintiffs Northern California Pipe Trades Trust Funds and Monroe County Employees' Retirement System (together, "Lead Plaintiffs") submit this opposition to Defendants' Request for Judicial Notice (ECF No. 72) ("Defs' RJN") concerning the documents attached as exhibits to the Declaration of Hope Skibitsky in Support of Defendants' Motion to Dismiss (ECF No. 71-1) (the "Skibitsky Declaration").[1]

## I.    INTRODUCTION

In connection with Defendants' Motion to Dismiss Amended Complaint (ECF No. 71) ("Motion to Dismiss" or "MTD"), Defendants have asked the Court to take judicial notice of 33 separate exhibits.[2] Lead Plaintiffs do not object to the Court's taking judicial notice of certain documents for the limited purpose of identifying the contents of U.S. Securities and Exchange Commission ("SEC") filings, earnings call transcripts, short seller reports, AppLovin blog posts, and a website printout referenced in the Amended Complaint for Violations of the Federal Securities Laws (ECF No. 61) ("Complaint"). *See* Exs. A-J, M, R, T-U, W-AB, AD, AF-AG (the "Unopposed Exhibits"). The remaining exhibits—analyst reports, a historical stock price chart covering a period far beyond the period November 7, 2024 through March 27, 2025 (the "Class Period"), an SEC filing not cited in Defendants' Motion to Dismiss, and two website printouts—are not referenced in the Complaint and are not proper subjects of judicial notice under Federal Rule of Evidence 201. *See* Exs. K-L, N-Q, S, V, AC, AE (the "Opposed Exhibits"). Moreover, Defendants' effort to use these documents to make factual arguments and inferences and contradict Lead Plaintiffs' well-pled allegations of fraud is improper in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). This is because "the Court is required

---

[1] All "Ex(s)." references herein are to the corresponding exhibits to the Skibitsky Declaration. Unless otherwise noted, all citations are omitted and emphasis is added.

[2] "Defendants" are AppLovin Corporation ("AppLovin" or the "Company"), Adam Foroughi, Herald Chen, Matthew Stumpf, and Vasily (Basil) Shikin ("Shikin").

to accept plaintiff's portrayal of the facts when evaluating a motion to dismiss." *Huizar v. Mandarich L. Grp. LLP*, 2013 WL 4209050, at *3 (C.D. Cal. Aug. 14, 2013). "If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Khoja*, 899 F.3d at 999 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Ninth Circuit has recognized that there exists a "concerning pattern in securities cases like this one: exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* at 998 (noting that the "overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results," and warning that "unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery"); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005) ("a factual determination by the court is inappropriate in a Rule 12(b)(6) dismissal"). "This risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access." *Khoja*, 899 F.3d at 998; *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281-82 (C.D. Cal. 2016) (addressing the "practical reality" of "inappropriate efforts by defendants" to "expand courts' consideration of extrinsic evidence at the motion to dismiss stage" as "particularly troubling in the common situation of asymmetry, where a defendant starts off with sole possession of the information about the alleged wrongdoing").

There are, however, two exceptions to the rule that outside evidence may not be considered when ruling on a motion to dismiss. First, the doctrine of incorporation by reference permits a district court to "'take into account documents whose contents are alleged in a complaint and whose authenticity no party questions.'" *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *3 (N.D. Cal. Nov. 27, 2018). Second, Rule 201 permits courts to take judicial notice of a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be

1  questioned." Fed. R. Evid. 201(b); *see also In re Plantronics, Inc. Sec. Litig.*, 2021 WL 8572663, at *3
2  (N.D. Cal. Mar. 29, 2021) (acknowledging that judicial notice should only be taken sparingly to avoid
3  "defendants . . . us[ing] the doctrine to insert their own version of events into the complaint to defeat
4  otherwise cognizable claims") (citing *Khoja*, 899 F.3d at 1002).

5        Where a document meets the criteria of Rule 201 or the doctrine of incorporation by reference,
6  the court should only take judicial notice of the document's existence, and should not take judicial
7  notice of the document for the truth of the matters asserted therein. *See, e.g.*, *Plumbers & Pipefitters*
8  *Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2025 WL 556283, at *5 (N.D. Cal. Feb. 18, 2025)
9  (taking judicial notice of SEC filings "only as to the existence of [the exhibits] and not for the truth of
10  the matters asserted therein"); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D.
11  Cal. 2010) (same). As the Ninth Circuit cautioned, "we may not, on the basis of [judicially noticeable]
12  reports, draw inferences or take notice of facts that might reasonably be disputed." *United States v.*
13  *Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

14  **III.  UNOPPOSED EXHIBITS**
15        **A.  Incorporated by Reference (Exs. A, C-J, M, R, Y-AB, AD, AF-AG)**
16        Lead Plaintiffs do not object to the Court's consideration of the Exs. A, C-J, M, R, Y-AB, AD,
17  and AF-AG. Each of these exhibits was referenced in the Complaint and Lead Plaintiffs do not dispute
18  their authenticity. Accordingly, judicial notice for the purpose of identifying the contents of the
19  referenced SEC filings, earnings call transcripts, AppLovin blog posts, and short reports is appropriate.
20  However, even for exhibits incorporated by reference, it is improper for the Court to consider them for
21  the truth of the matters asserted therein. *See CareDx*, 2025 WL 556283, at *5.

22        **B.  Certain SEC Filings (Exs. B, T, W-X)**
23        Lead Plaintiffs do not oppose judicial notice of the SEC filings attached as Ex. B (AppLovin's
24  2025 Q2 Form 10-Q), Ex. T (AppLovin's 2025 Q3 Form 8-K), Ex. W (Shikin's Form 144), or Ex. X
25  (AppLovin's Insider Trading Policy), for the limited purpose of identifying the statements they
26  contain.

27        **Ex. B**. Defendants rely on Ex. B to assert that "AppLovin now provides businesses with
28  software solutions to reach their target audience and optimize advertising revenue," and that Axon is

the Company's "AI-powered advertising recommendation engine" that "mak[es] predictions about the users most likely to engage" with ads. MTD at 3. Although Ex. B may be noticed to show that these statements appear in the filing, Defendants cannot offer it for the truth of those assertions.

**Ex. T**. Defendants cite Ex. T for the proposition that "AppLovin announced that its Board increased the preexisting share repurchase authorization by $3.2 billion." *Id.* at 6. But Ex. T merely announces an authorization increase and does not state whether any repurchases actually occurred. Judicial notice is proper only as proof that this statement was made, not for the truth of any matter asserted.

**Ex. W**. Ex. W is a Form 144 filed by defendant Shikin that includes a field titled "Date of Plan Adoption or Giving of Instruction, *If* Relying on Rule 10b5-1." Ex. W at 3. Defendants rely on this, along with Appendix B to the Motion to Dismiss, to suggest that certain trades were executed pursuant to a Rule 10b5-1 trading plan. But neither Ex. W nor Appendix B establishes that the challenged trades were in fact made pursuant to a valid Rule10b5-1 trading plan, or that any such plan satisfied Rule 10b5-1(c). Judicial notice is therefore limited to the fact of what Ex. W states and not the truth of Defendants' inference.

**Ex. X**. Defendants argue that the individual defendants' trades "occurred during one of AppLovin's limited open trading windows" and were "the only time they could" have been made. MTD at 11. While Ex. X reflects AppLovin's general trading window policy, it does not show that any specific sale was required to occur during that window or that the seller lacked material nonpublic information. Judicial notice is thus appropriate solely for the fact that the policy says what it says.

    **C.**    **Website Printout of S&P Dow Jones Indices News Release (Ex. U)**

Lead Plaintiffs do not object to judicial notice of Ex. U, an S&P Dow Jones Indices News Release, for the limited purpose of identifying the statement it contains. Defendants cite Ex. U to note that, "[i]n September 2025, S&P Dow Jones Indices added AppLovin to the leading S&P 500 index." *Id.* at 6. Although Ex. U reflects that this announcement was made, it does not bear on the truth of Defendants' substantive assertions about AppLovin's performance or business operations. Judicial notice is therefore limited to the fact of the statement, not its significance or accuracy.

## IV. OPPOSED EXHIBITS[3]

Defendants proffer the Opposed Exhibits for the sole purpose of introducing their version of the facts. The Opposed Exhibits consist of analyst reports, a historical stock price chart covering a period far beyond the Class Period, an SEC filing not cited in the Complaint or Defendants' Motion to Dismiss, a post-Class Period earnings call transcript, and two website printouts—all of which are being offered by Defendants for the Court to accept as fact matters discussed therein.

### A. Analyst Reports Not Referenced in the Complaint (Exs. K, N, O, P, Q)

Defendants request that the Court take judicial notice of five analyst reports about AppLovin. Defs' RJN at 4-5. None of the analyst reports are referenced in the Complaint and they are not subject to judicial notice under Rule 201.

Defendants claim that analyst reports "are proper subjects of judicial notice" and that courts take judicial notice of these reports to determine what may or may not have been disclosed to the public. *Id.* As an initial matter, Defendants have failed to demonstrate whether any of the analyst reports were, in fact, publicly disclosed or publicly available during the Class Period. Analyst reports of the type submitted by Defendants are typically prepared for a limited audience of an investment bank's clients, and there is no indication that the reports Defendants would have the Court judicially notice were actually made public during the Class Period. *See* Stephan Grüber, *Intangible Values in Financial Accounting and Reporting: An Analysis from the Perspective of Financial Analysts* 175 (2014) ("[T]ypically, sell-side research is not offered to the general public, but only distributed to (institutional) clients of banks, brokerage houses and the like."). Thus, the fact Defendants would have the Court judicially notice—the information publicly available and known to the market during the putative Class Period—is not capable of accurate and ready determination by reviewing the analyst reports.

Defendants' proposed analyst reports also reflect an inherent bias rendering their presentation of facts "subject to reasonable dispute" and improper subjects of judicial notice. Fed. R. Evid. 201(b).

---

[3] Defendants also seek judicial notice of Ex. S, a document that is not cited or referenced anywhere in the Motion to Dismiss. As such, Lead Plaintiffs object to its consideration because it has no bearing on any argument raised in the Motion to Dismiss.

In almost every instance, the firms issuing those reports identified AppLovin as a client and/or disclosed that they had been or expected to be paid by AppLovin for investment banking services.[4] They also disclosed that the compensation of the analysts themselves was tied to that investment banking revenue.[5] Courts routinely hold that analyst reports are not proper subjects of judicial notice because of this inherent bias. *See, e.g.*, *In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *4 (S.D. Cal. Sep. 25, 2019) ("the Court finds that the [analyst] report could potential [sic] reflect inherent bias rendering the report inappropriate for judicial notice"); *Puma*, 213 F. Supp. 3d at 1282 (rejecting request to judicially notice analyst reports because they "reflect an inherent bias favoring [defendant]"); *Shupe v. Rocket Cos., Inc.*, 660 F. Supp. 3d 647, 664-65 (E.D. Mich. 2023) (rejecting request to judicially notice analyst report as it "'reflect[s] [the analysts'] personal opinions,'" "'its accuracy is not guaranteed,'" and "concedes the possibility of bias" with its conflict of interest disclosures).[6] This bias is especially heightened here, where the facts Defendants seek judicial notice of (*i.e.*, analysts' reaction to short seller reports) consist of talking points that Defendants themselves provided in a "sell-side [analyst] group call." Ex. P at 1.

Further, Defendants rely on the analyst reports to argue disputed factual points, including that the short seller reports lack merit, are speculative, or that AppLovin's performance is instead attributable to its innovation and value creation, as purportedly reflected in analysts' maintained "buy"

---

[4]     *See* Ex. N at 6 ("BTIG LLC expects to receive or intends to seek compensation for investment banking services in the next 3 months from: AppLovin Corp."); Ex. O at 5 ("HSBC expects to receive or intends to seek compensation for investment banking services from this company in the next 3 months."); Ex. P at 4 ("Piper Sandler has had a client relationship or has received compensation for investment banking services from AppLovin Corp. within the past 12 months."); Ex. Q at 2 ("In the past 12 months, Benchmark and its affiliates have received compensation for investment banking services from [AppLovin]."); *see also* Ex. K at 4, 7 ("Wedbush Securities does and seeks to do business with companies covered in its research reports"; "WS makes a market in the securities of AppLovin Corp.").

[5]     *See* Ex. K at 4 ("The analysts receive compensation that is based upon . . . WS' investment banking activities."); Ex. N at 6 ("The research analyst(s) responsible for the preparation of this report receives compensation based upon . . . internal/client feedback[] and overall Firm revenues."); Ex. O at 6 ("A covering analyst/s has received compensation from this company in the past 12 months."); Ex. P at 3 ("Piper Sandler research analysts receive compensation that is based, in part, on overall firm revenues, which include investment banking revenues.").

[6]     None of the cases cited by Defendants address concerns about the presence of any bias by analysts or their investment bank employers. *See, e.g.*, *Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *4 (N.D. Cal. June 19, 2020) (taking judicial notice of analyst report for facts "'not subject to reasonable dispute'").

1  ratings. *See* MTD at 5-6. These are contested factual issues that are not proper subjects of judicial
2  notice. *See In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *3 (N.D. Cal. Jan. 27, 2016)
3  (rejecting judicial notice of analyst reports because their only relevance would be to prove the truth of
4  disputed statements). Defendants also invoke the analyst reports to rewrite Lead Plaintiffs' allegations
5  and to suggest that shareholders' losses stemmed from causes other than the disclosure of Defendants'
6  fraudulent conduct. Because Defendants seek judicial notice of the reports for these impermissible
7  purposes, their request should be denied.

8        **B.**      **Historical Price Chart (Ex. V)**

9        Defendants also seek judicial notice of Ex. V, a historical stock price chart spanning from July
10  2022 through November 3, 2025, even though the Class Period only runs from November 7, 2024 to
11  March 27, 2025 (Complaint, ¶1) and the Complaint includes only a one-year chart covering the period
12  from July 2, 2024 to July 2, 2025 (*id.*, ¶8). Defendants contend that their chart is incorporated by
13  reference in the Complaint (Defs' RJN at 1-2), but the Complaint does not rely on any chart extending
14  beyond that one-year period. A document is not incorporated simply because it is similar in type, and
15  a chart reaching so far before and after the Class Period is irrelevant and not a proper subject of judicial
16  notice.

17        Defendants rely on Ex. V to argue that the proceeds from their Class Period stock sales were
18  higher only because AppLovin's stock price was higher when compared to an earlier period. But that
19  is an impermissible use of judicial notice: Defendants use the broader chart to draw factual inferences
20  about trading motive and scienter. Judicial notice cannot be used to resolve disputed facts or to adopt
21  Defendants' narrative over the allegations of the Complaint. *See In re Cadence Design Sys., Inc. Sec.*
22  *Litig.*, 692 F. Supp. 2d 1181, 1193 n.10 (N.D. Cal. 2010) (denying defendants' request for judicial
23  notice as to Cadence's stock prices over the relevant period because "it does not find this information
24  to illuminate the questions of scienter in this case"); *see also In re Apple Inc. Sec. Litig.*, 678 F. Supp.
25  3d 1147, 1153 (N.D. Cal. 2023) (denying judicial notice of a document offered to show that Apple's
26  market capitalization had grown significantly under the CEO and to disprove intent to defraud
27  shareholders). Defendants' request should therefore be denied.

28

### C. Post-Class Period 2025 Q1 Earnings Call Transcript (Ex. AC)

Defendants seek judicial notice of Ex. AC—a May 7, 2025 earnings call transcript that post-dates the Class Period and is not cited in the Complaint—to argue that AppLovin publicly disclosed its e-commerce pilot was "'exclusively focused on sort of mid-market D2C' and that the Company was 'not in any sort of rush,' because it needed to build out the necessary technical and business infrastructure to support this new advertiser segment." MTD at 22. Defendants only other citation to Ex. AC is in support of the factual contention that "AppLovin rolled out the e-commerce pilot in limited fashion," offering it only to select advertisers while continuing to build that infrastructure. *Id.* at 3.

These type of "truth on the market" arguments for which Ex. AC is offered are improper at the pleading stage. *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008) (truth-on-the-market defenses are "intensely fact-specific"); *In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989) ("[T]o avoid Rule 10b-5 liability, any material information which insiders fail to disclose must be transmitted to the public with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by the insiders' one-sided representations."). Nor do they make sense, as it is impossible for information disclosed by Defendants in May 2025 to counter-balance or correct their misleading Class Period statements. Thus, because Defendants' rely on Ex. AC for its truth and for flawed factual arguments, judicial notice is improper.

### D. Printouts from Bear Cave Website (Ex. L) and Post-Class Period AppLovin Website (Ex. AE)

Defendants request that the Court judicially notice Ex. L, a printout from The Bear Cave website, and Ex. AE, a printout from AppLovin's website, claiming they only seek "to demonstrate what information was available to the market during the Class Period." Defs' RJN at 4. However, Defendants' Motion to Dismiss makes clear that they are offering these materials to make flawed factual arguments that are improper at the pleading stage.

**Ex. L.** Defendants rely on Ex. L to argue that The Bear Cave author is "part of the 'short world'" and writes for an audience of short sellers, and that the report contains analysis and opinion

1  subject to change. MTD at 5. But these statements are irrelevant to the issues before the Court and
2  cannot be judicially noticed for their truth. More importantly, Defendants conflate two different
3  concepts: identifying with the "short world" is not the same as holding a short financial position in
4  AppLovin, and nothing in Ex. L establishes that the author had any financial interest in AppLovin
5  stock. Because Defendants rely on Ex. L to inject factual assertions about The Bear Cave author's
6  supposed financial motives and to undermine the substance of The Bear Cave report, judicial notice is
7  improper.

8      **Ex. AE**. Defendants rely on Ex. AE to argue that the challenged statements concerning
9  advertiser returns and the e-commerce pilot cannot be false because AppLovin disclosed online that it
10 "offered nominal credits to newly onboarded advertisers." *Id.* at 22. As discussed above, this type of
11 truth-on-the-market argument is improper at this stage. *Supra*, §IV.C. (citing *Amgen*, 544 F. Supp. 2d
12 at 1025; *Apple*, 886 F.2d at 1116). Moreover, there is no indication that this webpage or information
13 was published or disclosed during the Class Period, and Defendants themselves acknowledge that Ex.
14 AE was published after the Class Period ended, on April 7, 2025. Moreover, as courts have repeatedly
15 held, website printouts may be noticed only for the fact that the statements appear on the site, not for
16 their truth or for any inference Defendants wish to draw from them. *See, e.g.*, *CareDx*, 2025 WL
17 556283, at *6 (denying judicial notice of a company webpage where the information did not address
18 the alleged misconduct and was offered merely to show what investors supposedly knew). Ex. AE
19 suffers from the same defect. The webpage does not bear on the alleged misrepresentations
20 concerning the e-commerce pilot's performance, nor does it address whether Defendants misled
21 investors about the pilot's limitations. It has no relevance to the issues at bar, but rather shows only
22 that AppLovin made general statements on its website about nominal credits after the Class Period had
23 already ended. Thus, judicial notice is improper.

## V. CONCLUSION

For the reasons set forth above, Defendants' request for judicial notice of the Opposed Exhibits should be denied and Defendants' arguments premised on those exhibits should not be considered by the Court.

DATED: January 12, 2026                               Respectfully submitted,

/s/ Marco Janoski
J. Marco Janoski Gray (Cal. Bar Id. 306547)
Ashley M. Kelly (Cal. Bar Id. 281597)
John M. Kelley (Cal. Bar Id. 339965)
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel.: (619) 231-1058
Fax: (619) 231-7423
Email: ashleyk@rgrdlaw.com
Email: mjanoski@rgrdlaw.com
Email: jkelley@rgrdlaw.com

Shawn A. Williams (Cal. Bar Id. 213113)
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Tel.: (415) 288-4545
Fax: (415) 288-4534
Email: shawnw@rgrdlaw.com

DATED: January 12, 2026

/s/ Karin E. Fisch
Karin E. Fisch (admitted *pro hac vice*)
Vincent J. Pontrello (admitted *pro hac vice*)
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY  10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: kfisch@gelaw.com
Email: vpontrello@gelaw.com

M. Elizabeth Graham (Cal. Bar Id. 143085)
GRANT & EISENHOFER P.A.
2325 3rd Street, Suite 329
San Francisco, CA 94107
Tel.: (415) 229-9720
Fax: (415) 789-4367
Email: egraham@gelaw.com

*Counsel for Lead Plaintiffs and Lead Counsel for the Class*

Thomas C. Michaud
VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
79 Alfred Street
Detroit, MI  48201
Tel.: (313) 578-1200
Fax: (313) 578-1201
Email: tmichaud@vmtlaw.com

*Additional Counsel*

**CERTIFICATE PURSUANT TO LOCAL RULE 5-1(i)(3)**

I, J. MARCO JANOSKI GRAY, am the ECF User whose identification and password are being used to file this document. Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from each of the other signatories.

Dated: January 12, 2026

*/s/ Marco Janoski*
J. MARCO JANOSKI GRAY