QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
Victoria Blohm Parker (Bar No. 290862)
vickiparker@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600

*Counsel for Defendants*

Alexander Benjamin Spiro (pro hac vice)
Hope D. Skibitsky (pro hac vice)
Brenna Nelinson (pro hac vice pending)
alexspiro@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
brennanelinson@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| BEN BROWNBACK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLOVIN CORPORATION, ADAM FOROUGHI, HERALD CHEN, MATTHEW STUMPF, and VASILY (BASIL) SHIKIN,<br><br>Defendants. | Case No. 4:25-cv-02772-HSG<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date: March 12, 2026<br>Time: 2:00 p.m.<br>Location: Courtroom 2, 4th Floor<br>Before: Honorable Haywood S. Gilliam |

1

## <u>TABLE OF CONTENTS</u>

2                                                                          <u>Page</u>

3
PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ..............................................................................................................1

I.      PLAINTIFFS' ENTIRE CASE RESTS ON UNRELIABLE SHORT REPORTS ....................2

II.     PLAINTIFFS FAIL TO PLEAD SCIENTER ........................................................4

III.    PLAINTIFFS FAIL TO PLEAD A MISSTATEMENTS CLAIM ..................................8

        A.      Plaintiffs Concede That The Alleged Misstatements Are Inactionable ..........................9

        B.      Plaintiffs' "Omissions of Deceptive Advertising" Theory Does Not Establish
                Falsity ..................................................................................9

        C.      The E-Commerce Statements Are Not False ................................................10

        D.      The Risk Factor Disclosures Accurately Warned Investors of Potential Risks..............13

        E.      Blog Post Statements About Revenue Recognition Are Not Actionable ......................13

IV.     PLAINTIFFS FAIL TO PLEAD A SCHEME CLAIM ................................................13

V.      PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ..........................................15

CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Accuray, Inc. Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. 2010) ............................................................................... 6

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ............................................................................................... 13

*In re Apple Inc. Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) .................................................................... 10

*Andamo v. Nextdoor Holdings Inc.*,
2025 WL 3238205 (N.D. Cal. Nov. 20, 2025) .................................................................... 4

*Aramic LLC v. Revance Therapeutics, Inc.*,
2024 WL 1354503 (N.D. Cal. 2024) ................................................................................... 4

*In re Bank of Am. Corp.*,
2011 WL 740902 (N.D. Cal. Feb. 24, 2011) ..................................................................... 15

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .............................................................................................. 6

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) .................................................................................... 1, 2, 16

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ............................................................................................ 10

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
338 F.Supp. 3d 995 (N.D. Cal. 2018) ............................................................................... 10

*City of Royal Oak Ret. Sys. v. Juniper Networks*,
2013 WL 2156358 (N.D. Cal. May 17, 2013) ..................................................................... 9

*In re Copper Mountain Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004) .............................................................................. 11

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) ............................................................................................. 4

*Diaz v. N. Dynasty Mins. Ltd.*,
2018 WL 5099749 (C.D. Cal. Apr. 30, 2018) ..................................................................... 4

*Dolly v. Gitlab Inc.*,
2025 WL 2372965 (N.D. Cal. 2025) ................................................................................... 5

*In re DraftKings Inc. Sec. Litig.*,
    650 F.Supp. 3d 120 (S.D.N.Y. 2023) ............................................................... 4, 9

*In re Galena Biopharma, Inc. Sec. Litig.*,
    117 F. Supp. 3d 1145 (D. Or. 2015) ...................................................................... 15

*In re Genius Brands Int'l Sec. Litig.*,
    97 F.4th 1171 (9th Cir. 2024) ................................................................................. 3

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*
    63 F.4th 747 (9th Cir. 2023) ................................................................................. 12

*Glazer Cap. Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) .................................................................................. 5

*Grigsby v. BofI Holding, Inc.*,
    979 F.3d 1198 (9th Cir. 2020) ................................................................................ 2

*In re Hansen Nat. Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ................................................................. 7

*Hershewe v. JOYY Inc.*,
    2021 WL 6536670 (C.D. Cal. Nov. 5, 2021) .................................................. 2, 3, 4

*Hershewe v. Joyy, Inc.*,
    2023 WL 3316328 (9th Cir. May 9, 2023) ......................................................... 1, 2

*Hoang v. ContextLogic, Inc.*,
    2023 WL 6536162 (N.D. Cal. Mar. 10, 2023) ........................................................ 8

*Hong v. Extreme Networks, Inc.*,
    2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) ...................................................... 11

*In re Intel Corp. Sec. Litig.*,
    2019 WL 1427660 (N.D. Cal. 2019) ............................................................... 13, 14

*In re Intrexon Corp. Sec. Litig.*,
    2017 WL 732952 (N.D. Cal. Feb. 24, 2017) .......................................................... 4

*Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*,
    522 F. Supp. 3d 660 (N.D. Cal. Mar. 2, 2021) ...................................................... 5

*Kim v. Allakos Inc.*,
    2022 WL 976974 (N.D. Cal. Mar. 31, 2022) ......................................................... 3

*Lamontagne v. Tesla, Inc.*,
    2024 WL 4353010 (N.D. Cal. 2024) .................................................................... 12

*In re LeapFrog Enters., Inc. Sec. Litig.*,
    527 F.Supp. 2d 1033 (N.D. Cal 2007) ................................................................. 14

*In re LendingClub Sec. Litig.*,
　　254 F. Supp. 3d 1107 (N.D. Cal. 2017) ................................................................. 10

*Lozada v. TaskUs, Inc.*,
　　710 F. Supp. 3d 283 (S.D.N.Y. 2024) .................................................................... 8

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
　　876 F.3d 541 (4th Cir. 2017) ............................................................................. 5, 6

*Masterson v. Cheetah Mobile Inc.*,
　　2018 WL 5099505 (C.D. Cal. June 27, 2018) ........................................................ 3

*McGovney v. Aerohive Networks, Inc.*,
　　367 F. Supp. 3d 1038 (N.D. Cal. 2019) ................................................................ 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
　　540 F.3d 1049 (9th Cir. 2008) .............................................................................. 9

*In re Mylan N.V. Sec. Lit.*,
　　2018 WL 1595985 (D. Conn. Mar. 28, 2018) ......................................................... 7

*In re Nektar Therapeutics Sec. Litig.*,
　　2020 WL 3962004 ....................................................................................... 2, 3, 4

*In re Nektar Therapeutics Sec. Litig.*,
　　34 F.4th 828 (9th Cir. 2022) ............................................................... 1, 3, 15, 16

*Ng v. Berkeley Lights, Inc.*,
　　2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ........................................ 1, 2, 3, 4, 7, 8, 9, 12

*In re Nimble Storage, Inc. Sec. Litig.*,
　　252 F. Supp. 3d 848 (N.D. Cal. 2017) ................................................................ 12

*Nowakowski v. AXT Inc.*,
　　2025 WL 1518322 (N.D. Cal. May 28, 2025) ......................................................... 2

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
　　380 F.3d 1226 (9th Cir. 2004) ............................................................................ 14

*Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*,
　　2024 WL 5182634 (9th Cir. 2024) ........................................................................ 6

*Plevy v. Haggerty*,
　　38 F. Supp. 2d 816 (C.D. Cal. 1998) ................................................................... 14

*Plumley v. Sempra Energy*,
　　847 F. App'x 426 (9th Cir. 2021) ..................................................................... 6, 7

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
　　759 F.3d 1051 (9th Cir. 2014) ..................................................................... 5, 6, 13

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ............................................................................ 12

*In re QuantumScape Sec. Class Action Litig.*,
   580 F. Supp. 3d 714 (N.D. Cal. 2022) ................................................................... 3

*Rodriguez v. Gigamon Inc.*,
   325 F. Supp. 3d 1041 (N.D. Cal. 2018) .................................................................. 8

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) .................................................................................. 5

*In re SentinelOne, Inc. Sec. Litig.*,
   2024 WL 3297150 (N.D. Cal. July 2, 2024) ............................................................ 5

*In re SentinelOne, Inc. Sec. Litig.*,
   2025 WL 2807321 (N.D. Cal. Oct. 2, 2025) ............................................................ 5

*Sneed v. AcelRx Pharms., Inc.*,
   2023 WL 4412164 (N.D. Cal. July 7, 2023) .......................................................... 13

*Snellink v. Gulf Res., Inc.*,
   870 F. Supp. 2d 930 (C.D. Cal. 2012) .................................................................... 3

*In re Solarcity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) ............................................................ 10, 11

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
   160 F. Supp. 2d 1059 (N.D. Cal. 2001) .................................................................. 9

*Stocke v. Shuffle Master, Inc.*,
   615 F. Supp. 2d 1180 (D. Nev. 2009) .................................................................... 6

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
   552 U.S. 148 (2008) .............................................................................................. 15

*Uniformed Sanitationmen's Ass'n Comp. Accrual Fund v. Equinix, Inc.*,
   2025 WL 39936 (N.D. Cal. Jan. 6, 2025) ......................................................... 3, 16

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
   759 F.Supp 3d 926 (D. Ariz. 2024) ................................................................... 7, 11

*In re Vantive Corp. Sec. Lit.*,
   110 F.Supp 2d 1209 (N.D. Cal 2000) .............................................................. 11, 12

*In re Vaxart, Inc. Sec. Litig.*,
   2023 WL 3637093 (N.D. Cal. May 25, 2023) ....................................................... 15

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
   57 F. Supp. 3d 950 (D. Minn. 2014) ..................................................................... 15

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ............................................................................... 12, 13

*Wozniak v. Align Tech., Inc.*,
    2011 WL 2269418 (N.D. Cal. June 8, 2011) ................................................................. 8

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc.*,
    738 F. Supp. 3d 1182 (N.D. Cal. 2024) ...................................................................... 14

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ......................................................................................... 4

## <u>Other Authorities</u>

Rule 10b-5(c) ................................................................................................................... 15

Rule 10b-5(a) ................................................................................................................... 15

Rule 10b5-1 ...................................................................................................................... 8

Rule 9(b) .......................................................................................................................... 15

1

## PRELIMINARY STATEMENT

2       This action is precisely the type of frivolous suit that the PSLRA is intended to curb.  Plaintiffs'

3   Opposition confirms what Defendants' Motion made clear: Plaintiffs' case is built entirely on

4   unsubstantiated claims contained in self-interested short seller reports that Ninth Circuit precedent holds

5   cannot support securities fraud claims.  *See Hershewe v. Joyy, Inc*., 2023 WL 3316328, at *1 (9th Cir. May

6   9, 2023); *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 832-34 (9th Cir. 2022); *In re BofI Holding,*

7   *Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020).  Plaintiffs' Opposition—heavy on rhetoric but bereft of

8   factual support—confirms that Defendants' Motion to Dismiss should be granted.

9       But even if the Short Reports were credited, the Complaint is defective for myriad reasons.  The

10   Opposition underscores Plaintiffs' failure to plead scienter—a defect fatal to both Plaintiffs' scheme and

11   misstatements claims.  Plaintiffs do not identify *a single* particularized allegation that Defendants knew

12   information undermining the challenged statements.  Instead, Plaintiffs point to the amount of Defendants'

13   stock sales and turn a blind eye to the fact that Defendants' pre-Class Period trading is *nearly identical* to

14   their Class Period trading, thus eliminating any argument that Defendants' sales were "suspicious."  *Ng v.*

15   *Berkeley Lights, Inc.*, 2024 WL 695699 at *14 (N.D. Cal. Feb. 20, 2024) (Gilliam, J.).

16       Unable to salvage their misstatements claim—and having failed to address nearly all of Defendants'

17   arguments on why the alleged misstatements are not actionable—Plaintiffs pivot to their so-called

18   "scheme" theory which they suggest resuscitates their case.  Hardly.  Plaintiffs' scheme claim is nothing

19   more than the misstatements claim repackaged:  Plaintiffs identify no manipulative or deceptive act apart

20   from the alleged misconduct that forms the basis of their misstatements claim, nor do they allege scienter.

21       Plaintiffs' loss causation theory fares no better:  The Ninth Circuit has clearly held that Short

22   Reports like those here cannot serve as corrective disclosures, even at the pleading stage.

23       And because Plaintiffs opted to amend their Complaint through a Motion to Supplement in a

24   panicked attempt to bolster their pleading, Dkt. 76, the Complaint should be dismissed with prejudice.

25

## ARGUMENT

26       Without the Short Reports, Plaintiffs have no complaint.  And because those reports cannot be

27   credited under Ninth Circuit precedent, the Complaint fails at the threshold.  But even if those allegations

28   are credited, Plaintiffs do not adequately plead any element of a securities fraud claim.

1    I.    **PLAINTIFFS' ENTIRE CASE RESTS ON UNRELIABLE SHORT REPORTS**

2    Plaintiffs' Complaint is deficient for the simple reason that it relies "entirely on [] negative report[s]

3    published by short seller[s]." *Hershewe v. JOYY Inc.*, 2021 WL 6536670 at *8 (C.D. Cal. Nov. 5, 2021).

4    This fundamental defect is fatal to all elements of Plaintiffs' claims. *See, e.g.*, *Hershewe*, 2023 WL

5    3316328 at * 1 (self-interested reports from short sellers lacking indicia of reliability cannot establish falsity

6    under the PSLRA); *Berkeley Lights*, 2024 WL 695699, at *10 (short report insufficient to allege falsity

7    given "obvious self-interest" and "lack of sufficient indicia plausibly demonstrating the report's

8    reliability"); *Nowakowski v. AXT Inc.*, 2025 WL 1518322, at *2-3 (N.D. Cal. May 28, 2025) (same); *In re

9    Nektar Therapeutics*, 2020 WL 3962004, at *12 (N.D. Cal. July 13, 2020) (allegations based on a short-

10    seller do not show scienter); *In re BofI Holding, Inc.*, 977 F.3d at 797 (short reports "not plausibly"

11    corrective disclosures).

12    Plaintiffs concede that *Nektar*, *Hershewe*, and *BofI*—cases in which the Ninth Circuit rejected

13    securities claims based on short-seller opinions—are binding precedent. And Plaintiffs concede that short

14    reports may only be credited where they contain "indicia of reliability." Opp. 8-9; *Hershewe*, 2023 WL

15    3316328, at *1. Yet Plaintiffs make no effort to explain why those indicia are present here. The best

16    Plaintiffs can muster is that the Short Reports "build upon and corroborate each other." Opp. 8. But

17    unreliable sources do not become reliable simply because other unreliable sources repeat the same baseless

18    opinions. The Complaint lacks any allegations lending credence to the Short Reports, and the Opposition

19    cites ***no facts*** corroborating the Short Reports' claims. *Id.* at 9; *see Hershewe*, 2021 WL 6536670, at *5

20    ("Muddy Waters did not corroborate its core conclusions . . . with an independent investigation or signed,

21    named affidavits from corporate insiders."). To the contrary, the Short Reports rely on "unverified and

22    unverifiable information," *Hershewe*, 2021 WL 6536670, at *5, made worse by Plaintiffs' concession that

23    the Short Reports disavow the accuracy of their findings, *see Grigsby v. BofI Holding, Inc.,* 979 F.3d 1198,

24    1208 (9th Cir. 2020) (short seller "[made] no representation as to the accuracy or completeness of the

25    information'" and "encouraged investors to do their own research") (internal quotations omitted).

26    Indeed, the Short Reports suffer from the same defects this Court found dispositive in *Ng v.

27    Berkeley Lights, Inc.*, 2024 WL 695699, at *13 (N.D. Cal. Feb. 20, 2024). Two of the reports have no

28    identified author—a fact courts have found disqualifying. *See Hershewe*, 2021 WL 6536670, at *4 (report

1  written by "'Muddy Waters' and not a named author" not reliable).  And while two reports do identify

2  authors, *see* Opp. 8, this Court has held that "this distinction [is not] persuasive, as the identity of the entity

3  that sponsored the report (as opposed to the identity of any actual person who wrote the representations in

4  it) does not change the 'character' of the report itself—namely, that it was based on secondhand information

5  gathered by a self-interested short-seller," *Berkeley Lights*, 2024 WL 695699, at \*16 n.7.  To the extent the

6  Short Reports rely on anonymous "experts" and purported former AppLovin employees, Plaintiffs concede

7  that those sources are "subject to the same standard applied to evaluate facts alleged to have originated

8  with any 'confidential informant.'"  *Nektar Therapeutics*, 2020 WL 3962004, at \*10.  But Plaintiffs do not

9  explain how they have described those sources "with sufficient particularity to support the probability that

10  a person in the position occupied by the source would possess the information alleged and provide adequate

11  corroborating details."  *Hershewe*, 2021 WL 6536670, at \*4; *see Masterson v. Cheetah Mobile Inc.*, 2018

12  WL 5099505, at \*2 (C.D. Cal. June 27, 2018) (rejecting reliance on short report quoting anonymous

13  employee without pleading position, tenure, and personal knowledge of issues).

14      Plaintiffs' authorities do not help them.  In *Uniformed Sanitationmen's Ass'n Comp. Accrual Fund

15  v. Equinix, Inc.*, 2025 WL 39936, at \*4 (N.D. Cal. Jan. 6, 2025), the Court acknowledged that "the

16  corroborative nature of the allegations" in a complaint must be considered when assessing the reliability

17  of a short report, and found myriad allegations in the complaint "tend[ed] to bolster the [short report's]

18  reliability," while recognizing that (unlike here) the short reports "alone would be far from sufficient to

19  plead falsity."  *Id.* at \*5.  Similarly, in *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714,

20  727, 731 (N.D. Cal. 2022), the short report was corroborated by a credentialed expert and was "littered

21  with factual assertions" contradicting the company's claims.  *In re Genius Brands Int'l Sec. Litig.*, 97 F.4th

22  1171 (9th Cir. 2024) did not involve a complaint based on short reports at all.  And *Snellink v. Gulf Res.,

23  Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012) relied on indicia of credibility not present here and is

24  irreconcilable with the Ninth Circuit's mandate that reports by "anonymous and self-interested short-sellers

25  who disavowed any accuracy" were "inadequate."  34 F.4th at 840.

26      The Complaint is instead comparable to the myriad others dismissed for recycling short report

27  opinions.  *Supra* 2-3; *see also e.g.*, *Kim v. Allakos Inc.*, 2022 WL 976974, at \*2, \*8-9 (N.D. Cal. Mar. 31,

28  2022) (dismissing claims that "rely on the findings in [short seller] Report as the basis for their complaint");

*In re Intrexon Corp. Sec. Litig.*, 2017 WL 732952, at *1, *4 (N.D. Cal. Feb. 24, 2017) (rejecting allegations which "primarily recite[] the findings of [short seller] report" that claimed company's "core technology suite was overhyped"); *Diaz v. N. Dynasty Mins. Ltd.*, 2018 WL 5099749, at *6 (C.D. Cal. Apr. 30, 2018) (PSLRA not satisfied when "[t]he basis for each and every allegation of falsity in the FAC is [short seller] Report"); *In re DraftKings Inc. Sec. Litig.*, 650 F.Supp.3d 120, 155 (S.D.N.Y. 2023) (dismissing 10(b) claims where allegations were "extracted and pled as true" from short reports). The PSLRA demands far more than "incorporat[ing] wholesale" a short report that "presented its conclusions as fact." *Hershewe*, 2021 WL 6536670, at *5. But that is all Plaintiffs have put forth.

## II.    PLAINTIFFS FAIL TO PLEAD SCIENTER

Plaintiffs bear the burden of pleading facts giving rise to an inference of scienter that is "*cogent and at least as compelling* as any opposing inference." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). The Opposition confirms that Plaintiffs do not support any such inference, let alone "detailed and specific allegations" showing "a nexus between the wrongful behavior and Individual Defendants' knowledge" as required by the Ninth Circuit. *Curry v. Yelp Inc.*, 875 F.3d 1219, 1227-28 (9th Cir. 2017). Indeed, Plaintiffs are unable to point to a single particularized allegation about what ***any Defendant*** knew and when, let alone their state of mind. *See Andamo v. Nextdoor Holdings Inc*., 2025 WL 3238205, at *4 (N.D. Cal. Nov. 20, 2025) (dismissing 10(b) claim where allegations "lack[ed] the necessary particularized facts regarding [defendant's] state of mind"); *Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at *14 (N.D. Cal. Mar. 30, 2024) ("None of the facts alleged in the FAC relate to the Defendants' state of mind."). Without "detailed and specific allegations" showing "Defendants' knowledge" of alleged misstatements, Plaintiffs' claims fail. *Curry*, 875 F.3d at 1227-28.

Plaintiffs' complete reliance on the Short Reports forecloses a finding of scienter. *See Nektar*, 2020 WL 3962004, at *12 (allegations based on short seller do not show knowledge or intent of fraud); *Berkeley Lights*, 2024 WL 695699, at *13. But even crediting Plaintiffs' allegations, Plaintiffs fail to plead scienter.

***Actual knowledge.*** Because many alleged misstatements are forward-looking, Plaintiffs must plead that they were made with ***actual knowledge*** of falsity. Statements 2, 5, 8, 11-12, 17, 20, 22, 29, 32-33, 36. And for the few challenged statements that are not forward-looking, deliberate recklessness must "strongly suggest[] actual intent." *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008). The

Opposition underscores the Complaint's failure to meet either standard.

*Core operations.* Plaintiffs' lead argument cites the "core operations" theory. Opp. 15-18. But this theory "is not easy" to establish, *In re SentinelOne, Inc. Sec. Litig.*, 2025 WL 2807321, at \*7 (N.D. Cal. Oct. 2, 2025) (Gilliam, J.) (quoting *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014)), and applies only in an "exceedingly rare category of cases," *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008). Plaintiffs do not claim to plead "specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations" or "witness accounts demonstrating that executives had actual involvement in creating false reports." *Intuitive Surgical*, 759 F.3d at 1062. Plaintiffs instead advance only generic arguments—that AppLovin's advertising segment accounted for 68% of the Company's revenue in 2024 and that AppLovin is "a founder-led company run by a small group of senior executives," Opp. 16—that do not suffice. *See Iron Workers Loc. 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 679 (N.D. Cal. Mar. 2, 2021) ("[I]t is not sufficient to allege that gaming was Defendants' core business."); *Dolly v. Gitlab Inc.*, 2025 WL 2372965, at \*14 (N.D. Cal. 2025) ("Even if Individual Defendants had knowledge of all of the company's operations, Plaintiff has not identified any particularized facts that Individual Defendants knew that would undermine the truth of any challenged statement."). Plaintiffs even make the circular argument that because Defendants spoke about AXON—i.e., made the alleged misstatements—they possess scienter. Opp. 16. But this is not the standard; if it were, the scienter requirement would be written out of the PSLRA.

In fact, Plaintiffs concede they have nothing more, instead resorting to the strained argument that Defendants' public statements about AXON merely "support the inference" that Defendants had access to information "reflecting that [AppLovin's] reported revenue growth was also materially driven by deceptive practices." Opp. 17. To start, even were this tenuous assertion permissible under the PSLRA, it would only support scienter for the fraction of the alleged misstatements concerning revenue drivers. But it is not permissible because Plaintiffs "may not stack inference upon inference to satisfy the PSLRA's pleading standard." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017). A strong inference of scienter must "be supported by ***facts***, not other ***inferences***." *Id.*; *see also In re SentinelOne, Inc.*, 2024 WL 3297150, at \*7 (N.D. Cal. July 2, 2024) (relying on *Maguire* in refusing to "infer scienter based on an inference that the statements were false and misleading"); *see generally Plumley v. Sempra*

*Energy*, 847 F. App'x 426, 430 (9th Cir. 2021) (rejecting "wholly conclusory" scienter arguments).

In light of their failure to plead access to contrary information, to invoke core operations, Plaintiffs must plead the "rare circumstances" in which "it would be 'absurd' to suggest that management was without knowledge" of the prominent, relevant fact. *Intuitive Surgical*, 759 F.3d at 1063; *see* Opp. 17-18. Plaintiffs argue it would be "absurd" to suggest Defendants "lacked awareness of the facts underlying the alleged misstatements," Opp. 18, but they do not identify what those facts are or which statements those purported facts rendered knowingly false. *See, e.g.*, *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1188 (D. Nev. 2009) ("Without such [specific allegations that Defendants had information contrary to what was projected], the Court cannot ascertain whether there is any basis to the allegations that Defendants had actual or constructive knowledge" of adverse facts). Plaintiffs' authority underscores these deficiencies. In *Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*, 2024 WL 5182634, at *3 (9th Cir. 2024), the court found the "absurdity" test satisfied only because the complaint alleged contrary information threatening "more than half" of the defendant's revenue and identified an executive with specific "responsibility" for the issue. And in *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-88 (9th Cir. 2008), the court inferred knowledge of stop-work orders that had a "devastating effect on the corporation's revenue." Plaintiffs do not (and cannot) plead similar particularized allegations. *See In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 951 (N.D. Cal. 2010) (declining to apply core operations doctrine absent facts "of such magnitude as in *Berson* that it would be absurd to suggest that [d]efendants were unaware of them").

***Alleged Prior Misconduct.*** Plaintiffs' argument that Foroughi's alleged prior conduct reinforces scienter, Opp. 23, is another unsupported "stacked inference" the PSLRA prohibits. Unlike *Stocke*, where the company "admitted to various GAAP violations during and prior to the Class Period," 615 F. Supp. at 1189-90, Plaintiffs allege only vague assertions that Foroughi allegedly worked at ***other companies***, years earlier, that were later allegedly criticized for different practices. That is not particularity.

***Alleged Regulator Inquiries.*** Unable to plead scienter from the Complaint's own allegations, Plaintiffs resort to alleged "post-Class Period government investigations" referenced in their Supplement. Opp. 23. But "the mere existence of [an] investigation cannot support any inferences of wrongdoing or fraudulent scienter." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007). Plaintiffs' cases do not hold otherwise. In *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F.Supp

3d 926, 978 (D. Ariz. 2024) the court considered multiple government investigations and penalties as part of its holistic analysis only because defendants did not challenge the allegations (unlike here).  In *In re Mylan N.V. Sec. Lit.*, 2018 WL 1595985, at *13 (D. Conn. Mar. 28, 2018) the court emphasized that "[u]nlike other government *investigations*, ***which generally do not demonstrate scienter***," the relevant communication "reflected a final determination" by the regulator that the defendant had violated the law. (emphasis added).  Here, Plaintiffs do not, and cannot, make such allegations.  Indeed, they concede that no regulator has even announced an inquiry into AppLovin.

***Stock sales.***  Plaintiffs argue that Defendants' stock sales support scienter, Opp. 18-22, but point to no particularized facts showing that the sales were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information."  *Berkeley Lights*, 2024 WL 695699, at *15.  Nor could they, given Defendants' showing that the sales were consistent with pre-Class Period trading practices "both in timing and in percentage of shares sold."  *Plumley*, 847 Fed. Appx. at 429 (stock sales not indicative of scienter).

Unable to respond to Defendants' consistent trading practices, Plaintiffs double down on the ***amounts*** Defendants allegedly made from their sales.  Opp. 18-19.  But as in *Berkeley Lights*, allegations that Defendants "made significant profits from the sale of [AppLovin] stock 'do not raise an inference of scienter, let alone a strong inference, because the [Complaint] contains no allegations regarding the [D]efendants' prior trading history, which are necessary to determine whether the sales during the class period were out of line with historical practices.'"  2024 WL 695699, at *15.  This is particularly true here given the absence of allegations that Defendants sold in anticipation of negative news, AppLovin did not disclose any negative information following the sales, and that Plaintiffs do not (and cannot) allege that Defendants had any prior notice of the Short Reports.  Mot. 10-11; *see Lozada v. TaskUs, Inc.*, 710 F. Supp. 3d 283, 321 (S.D.N.Y. 2024) (sales not suspicious where there was no "suggestion that [defendants] expected any negative news to emerge regarding the [company,]" and "no allegations that the company restated its financials or otherwise updated its public disclosures" following short report).  Plaintiffs argue the mere fact that AppLovin's stock price had "surged" is enough, Opp. 20, but if that were the standard, scienter could be established any time a defendant sells stock when the price is high.

Likewise, Plaintiffs' argument that Defendants sought to profit while allegedly in possession of

1    material nonpublic information by selling **after** that information became public, Opp. 20, makes no sense.

2    *See Hoang v. ContextLogic, Inc.*, 2023 WL 6536162, at \*26 (N.D. Cal. Mar. 10, 2023) ("Sales after

3    corrective disclosures do not support an inference of scienter.").  And to the extent Plaintiffs argue that

4    sales after one disclosure are probative because the disclosure was only "partial," that theory fails for the

5    same reason Plaintiffs' loss causation arguments fail:  Plaintiffs set forth no allegations showing what new

6    information emerged from each successive Short Report.  *Infra* Section V.

7            Plaintiffs' argument that Rule 10b5-1 trading plans are affirmative defenses inappropriate at the

8    pleading stage, Opp. 21, is wrong.  Courts routinely find such trades non-indicative of scienter.  *E.g.*,

9    *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1056—1057 (N.D. Cal. 2018).  Plaintiffs' assertion that

10   it is "telling that no other Individual Defendant" used a trading plan, Opp. 21, lacks any explanation or

11   support.  Plaintiffs also ignore that sales to cover tax withholdings—which account for a majority of

12   Defendants' Class Period trades—do not support an inference of scienter.  *See* Mot. 9-10 & App. B.

13           Finally, Plaintiffs ignore disclosures concerning KKR's exit from its investment beginning prior to

14   2024 and repeat their assertion that KKR's trades support an inference of Defendants' scienter.  Mot. 11;

15   Opp. 22.  Third-party sales are "irrelevant to the determination of the named defendant[s'] scienter."

16   *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at \*14 (N.D. Cal. June 8, 2011).  Plaintiffs' reliance on

17   an Investors' Rights Agreement and Chen's former KKR affiliation, Opp. 22, does not help them.  Plaintiffs

18   quote *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059 (N.D. Cal. 2001), to argue that

19   third-party sales "may support scienter" where plaintiffs allege "specific facts suggesting that defendants

20   intended their manipulation of [company] stock to assist these specific colleagues."  Opp. 22.  But that

21   language is not found in *Splash*—it appears only in a parenthetical quoting another case.  *Splash*, 160 F.

22   Supp. 2d at 1082 n.22.  *Splash* **refused** to "consider [third party] sales in determining the scienter" because

23   the complaint did "not allege specific facts ... indicating that [the non-defendants] personally possessed

24   non-public" information.  *Id*.  Plaintiffs do not allege that KKR had non-public information or Defendants

25   manipulated AppLovin's stock to benefit KKR.  *Splash* thus confirms that KKR's sales are irrelevant.

26   **III.    PLAINTIFFS FAIL TO PLEAD A MISSTATEMENTS CLAIM**

27           Falsity is only adequately alleged under the PSLRA "'when a plaintiff points to [the] defendant's

28   statements that directly contradict what the defendant knew at that time.'"  *Berkeley Lights*, 2024 WL

695699, at *6.  Plaintiffs summarily argue that Defendants "ignore [their] well-pled allegations," Opp. 10, but allegations that merely regurgitate Short Report accusations are *per se* ill-pled.  *See generally DraftKings*, 650 F.Supp.3d at 156 (counsel did not "confirm[] *any* of the attributions to unnamed sources").  And rather than explain with particularity why any statement was false when made, Plaintiffs set forth "decidedly vague" allegations of "fraud generally"—the precise kind of inadequate pleading the Ninth Circuit rejects.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

### A.    Plaintiffs Concede That The Alleged Misstatements Are Inactionable

The Opposition lays bare Plaintiffs' inability to respond to Defendants' falsity arguments:  Plaintiffs reorganize statements into new categories to avoid arguments for which they have no response.[1]  And in fact, Plaintiffs do not confront most of Defendants' arguments.  Plaintiffs do not address Statements 11,13-14, 17, 23, 25-27, 29, and 31 and therefore concede their dismissal.  *See, e.g.*, *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 338 F.Supp.3d 995, 1005 (N.D. Cal. 2018).  Further, Defendants demonstrated that nearly all of the alleged misstatements are inactionable puffery, opinions, or forward-looking statements protected by the PSLRA Safe Harbor.  Mot. 17-19.  Plaintiffs do not address these arguments either, instead setting forth a conclusory declaration that whole categories are not puffery or opinions without citation to a ***single*** specific alleged misstatement.  Opp. 12-13.  Plaintiffs similarly concede Defendants' arguments that (1) Statements 1, 3-4, 6, 21, 24, 26-28, 31, 33, 36 accurately report historical performance, Mot. 20-21; (2) Statements 13-14, 22, 28 concerning platform scalability and market opportunity are not false because Plaintiffs do not allege AppLovin's platform cannot serve diverse advertisers, Mot. 22-23; and (3) Statements 30, 34 concerning demand are not false because Plaintiffs cannot dispute that demand existed, Mot. 23.  Plaintiffs' silence is dispositive.

### B.    Plaintiffs' "Omissions of Deceptive Advertising" Theory Does Not Establish Falsity

Plaintiffs concede that Defendants' statements concerning AXON as a contributor to revenue growth were not false, and instead argue these statements were misleading because Defendants allegedly omitted that growth was "also driven by deceptive practices."  Opp. 9-11.  Simply, Plaintiffs admit that

---

[1]  Given Plaintiffs' failure to make clear for Defendants or this Court which categories and statements are being addressed and where, attached as Appendix C for the Court's convenience is an updated version of Appendix A to Defendants' Motion to Dismiss that adds a column for Plaintiffs' responses or lack thereof.

AXON **did** drive revenue growth, *see* Opp. 10-11, and argue only that the statements were "misleading" because they omitted that **other** factors may have contributed to revenue growth. *Id.* But an omission is actionable only if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiffs' conclusory allegations of other growth contributors do not satisfy this standard. "[T]o fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1003 (N.D. Cal. 2017). In *Solarcity*, plaintiffs alleged that defendants' statements about regulatory issues affecting demand were misleading because defendants failed to disclose that "other factors" had also impacted demand. *Id.* at 1002-03. The court rejected this theory because plaintiffs did not "allege with particularity what those factors are or which 'other factors' should have been disclosed," and could not explain "why disclosing that these demand problems had existed all along would alter the total mix of information." *Id.* at 1003. Here, too: Plaintiffs' allegations that unspecified "deceptive practices" also contributed to revenue do not render Defendants' accurate statements about AXON misleading.[2] *See Metzler*, 540 F.3d at 1070. Plaintiffs do not allege that the "deceptive practices" are part of AXON or that there is anything misleading about AXON itself. Plaintiffs allege only that separate practices—such as AppHub's app installation program and certain advertising techniques—also contributed to revenue growth. *See* ¶¶ 99-105.

### C. The E-Commerce Statements Are Not False

Plaintiffs contend that Defendants' statements about the e-commerce pilot—including that it would scale significantly, was the best and fastest-growing product Defendants had ever released, and that demand was high—were misleading because the pilot's growth was allegedly "distorted" and "not organic." Opp.

---

[2]  Plaintiffs' authority is misplaced. Opp. 10-11. *Apple* and *LendingClub* merely stand for the proposition that "where a party goes beyond describing historical results and touts specific factors driving those results, it is obligated to disclose negative information related to those factors." *In re Apple Inc. Sec. Lit.*, 2020 WL 2857397, at *10 (N.D. Cal. June 2, 2020); *see also In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1118 (N.D. Cal. 2017) (company touting "organic" matches obligated to disclose matches were artificially inflated through self-dealing). In *Carvana Co.*, 759 F.Supp.3d at 959-60, the court dismissed claims where defendants identified one factor contributing to results but omitted others, holding that the company "never stated it was the singular factor." Here, Plaintiffs do not allege that Defendants failed to disclose any information about AXON or claimed AXON was the only factor contributing to revenue growth.

11-12, 15.[3]  Defendants demonstrated that nearly all of these statements are inactionable puffery, opinions, and forward-looking, and are otherwise not false.  Plaintiffs' strained arguments to the contrary fail.

*First*, Plaintiffs' e-commerce argument rests almost entirely on post-Class Period developments— alleged sequential slowdowns in e-commerce growth, the launch of a paid marketing plan, and Defendants' post-Class Period statements about how the pilot was structured.  *See* Opp. 11-12.  But subsequent events alone cannot establish that earlier statements were false when made.  *See In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1217 n. 14 (N.D. Cal 2000) ("[E]vents occurring after the alleged class period do not show that the representations made during the class period were false when made, plaintiffs must point to particular contemporaneous facts that establish the falsity of the statement at the time it was made."); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 867 (N.D. Cal. 2004) ("The court finds it difficult to infer that defendants' statements were false when made simply because the projections in those statements did not come completely true.").  Plaintiffs' reliance on developments that emerged after the Class Period amounts to improper "fraud by hindsight."  *See Vantive*, 110 F. Supp. 2d at 1216.

*Second*, Plaintiffs argue these statements are not inactionable opinions because they "express certainty about an existing thing or occurrence" and "contain[] untrue 'embedded statements of fact,'" Opp. 12, but ***do not give a single example of what they are referring to***.  And Plaintiffs categorically argue the statements are not puffery because they "provide a concrete description" of the e-commerce pilot, *id.* at 13,[4] but do not explain how that renders any specific statement actionable.  *See Berkeley Lights*, 2024 WL 695699, at *6.  Statements that e-commerce "is looking so strong" or that Defendants have "never seen anything that looks like this" are precisely the type of subjective optimism courts routinely find inactionable.  *See Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at *9 (N.D. Cal. 2024) (statements about

---

[3]  The result of Plaintiffs' strategic decision lump together their categories of alleged misstatements is an even more egregious mismatch between the statements and supposed reason for falsity.  Now, even more so than before the Opposition, "the reasons Plaintiffs offer as to why the statements are false or misleading bear no connection to the substance of the statements themselves[.]" *Hong v. Extreme Networks, Inc*., 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017); *see, e.g.*, Opp. 11 (arguing statement that AXON is "very powerful" is false because e-commerce pilot growth was not representative of the actual growth").

[4]  That certain statements were made in response to analyst questions is irrelevant.  Opp. 12-13.  In *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, the statements "went beyond mere optimism by provid[ing] a concrete description of the past and present state of the pipeline" and plaintiffs "plausibly alleged" the statements "contravened the unflattering facts in [the company's] possession." 63 F.4th 747, 770-71 (9th Cir. 2023). Plaintiffs allege no facts that Defendants had information contradicting their optimism.

1   "aims and aspirations" and expressions of "confidence" are "too vague for an investor to rely on them");

2   *In re Nimble Storage, Inc. Sec. Litig.*, 252 F. Supp. 3d 848, 854 n.8 (N.D. Cal. 2017) (same).

3      *Third*, Plaintiffs argue that the e-commerce statements are not protected by the Safe Harbor because

4   they combine "current or past facts" with forward-looking statements.  Opp. 13.  Plaintiffs are wrong.

5   Statements about future scalability and growth expectations are, "by definition, forward-looking

6   statements."  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017); *see also Wochos v.*

7   *Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) (statements about future production plans

8   "unquestionably" forward-looking).  To overcome the Safe Harbor, Plaintiffs must allege that the statement

9   "goes beyond the articulation of plans, objectives, and assumptions and instead contains an express or

10  implied concrete assertion containing a specific current or past fact."  *See Wochos*, 985 F.3d at 1191; *see*

11  *also id.* at 1192 (statements a company is "on track" or that "there are no issues" are "alternative ways of

12  declaring or reaffirming the objective itself").  Plaintiffs have identified no concrete assertions of current

13  or past fact embedded in the challenged statements.[5]  Plaintiffs' one-sentence assertion that Defendants'

14  cautionary language was "boilerplate," Opp. 13, fares no better.  Aside from parroting that cautionary

15  language must be "precise" and "directly address" the alleged misrepresentation, *id.*, Plaintiffs do not

16  explain why the cautionary language Defendants identified in their Motion does not suffice.  Mot. 17-18.

17     *Finally*, lacking any response to Defendants' Class Period disclosures concerning the intentional

18  slow rollout of AppLovin's e-commerce pilot, *id.* at 22, Plaintiffs incorrectly characterize Defendants'

19  arguments as an improper "truth on the market" defense, Opp. 13.  Defendants have demonstrated that they

20  disclosed the information Plaintiffs allege was omitted.  That is not a truth-on-the-market defense, but

21  rather holding Plaintiff to their burden of "demonstrat[ing] that [the challenged statements], when read in

22  light of all the information then available to the market, conveyed a false or misleading impression," *In re*

23  *Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *10 (N.D. Cal. 2019), a burden which Plaintiffs ignore, *see*

24  *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1055 (N.D. Cal. 2019) (where Defendants

25  disclosed "exactly what Plaintiff[] claim[s] [Defendants] omitted," challenged statements not misleading).

26

---

27  [5] Plaintiffs identify two statements (¶¶ 120, 124) as containing current or past facts, Opp. 13, but both
    contain forward-looking language.  When a statement includes both forward- and non-forward-looking

28  statements, the statements are nonetheless forward looking where "examined as a whole, the challenged
    statements relate[] to future expectations and performance."  *Intuitive Surgical*, 759 F.3d at 1059.

### D.    The Risk Factor Disclosures Accurately Warned Investors of Potential Risks

Plaintiffs argue that Defendants' risk disclosures were misleading because they presented certain risks "as merely a hypothetical" when those risks had purportedly "already ... come to fruition."  Opp. 14 (quoting *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021)).  But Plaintiffs fail to identify with any specificity: (1) what risk allegedly came to fruition; (2) what information was not disclosed that should have been; or (3) when any such event occurred.  *See Sneed v. AcelRx Pharms., Inc.,* 2023 WL 4412164, at *7 (N.D. Cal. July 7, 2023) (dismissing claims where plaintiffs failed to allege "that any of the risks being warned of had already come to fruition at the time the statements were made").  Notwithstanding these failures, risk disclosures are not false even if a company allegedly faces challenges related to a risk factor.  "[W]here a company's filings contain abundant and specific disclosures regarding the risks facing the company, as opposed to terse, generic statements, the investing public is on notice of these risks and cannot be heard to complain that the risks were masked as mere contingencies."  *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 832 (C.D. Cal. 1998); *see In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F.Supp. 2d 1033, 1048 (N.D. Cal 2007) (risk factors "not actionable to the extent plaintiffs contend defendants should have stated that the adverse factors 'are' affecting financial results rather than 'may' affect financial results").

### E.    Blog Post Statements About Revenue Recognition Are Not Actionable

Plaintiffs contend Foroughi's Blog Post statements that AppLovin does not earn revenue on "clicks or mere impressions" and that "every download results from an explicit user choice" are "contradicted by the Company's own revenue recognition disclosures."  Opp. 14-15.  Even accepting Plaintiffs' claimed contradiction, Plaintiffs also argue that AppLovin's revenue recognition practices were ***fully disclosed*** in AppLovin's SEC filings, which defeats Plaintiffs' claims that the statements are misleading.  *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004) is inapt.  Opp. 15.  There, unlike here, the alleged "contemporaneous reports or data" were not public, rendering the defendant's statements misleading.  *Oracle*, 380 F.3d at 1230; *see generally Intel Corp.*, 2019 WL 1427660, at *10 (statements must be evaluated "in light of all the information then available to the market").

## IV.    PLAINTIFFS FAIL TO PLEAD A SCHEME CLAIM

Recognizing that their 10b-5(b) claim for alleged misstatements is not viable, Plaintiffs seek to bolster their scheme claim and convince this court that the basis for liability is broader and the pleading

1   standard is lower.  *See* Opp. 6 & n.4.  Neither is true, and Plaintiffs' backup plan falls flat.  To be clear—

2   while Plaintiffs seek to obscure the standard for pleading scheme liability by referring only to the "nature,

3   purpose, and effect," Opp. 6, to state a claim for securities fraud based on scheme liability, Plaintiffs must

4   plead, *inter alia*, that Defendants committed a deceptive or manipulative act in furtherance of the alleged

5   scheme; scienter; and loss causation.  *E.g.*, *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc*., 738 F.

6   Supp. 3d 1182, 1206 (N.D. Cal. 2024) (cited at Opp. 6).  In particular, Plaintiffs must set forth "what

7   manipulative acts were performed, which defendants performed them, when the manipulative acts were

8   performed, and what effect the scheme had on the market for the securities at issue."  *In re Bank of Am.*

9   *Corp.*, 2011 WL 740902, at *9 (N.D. Cal. Feb. 24, 2011) (dismissing 10(b) scheme claims).

10      But Plaintiffs' Rule 10b-5(a) and (c) scheme claim rests on the ***exact same*** allegations as their 10b-

11   5(b) claim—as evidenced by Plaintiffs' own argument.  *See* Opp. 6-7; ¶¶ 98-114 (recapping allegations in

12   misstatements section).  Plaintiffs have simply repackaged those inadequate allegations into a discussion

13   of the purported "nature, purpose, and effect" of Defendants' scheme.  These new labels do not satisfy Rule

14   9(b).  Plaintiffs do not plead distinct manipulative acts, by who, or when, they allege ***no facts*** to support a

15   strong inference of scienter, and they do not even attempt to plead loss causation for their scheme claim.

16      These failures distinguish Plaintiffs' Complaint from Plaintiffs' authority.  *In re Vaxart, Inc. Sec.*

17   *Litig.*, 2023 WL 3637093, at *3 (N.D. Cal. May 25, 2023) involved specific allegations of an "intentional

18   scheme to manipulate the price of Vaxart shares," including a conspiracy to appoint a CEO to carry out an

19   aggressive PR campaign and change insider trading policy.  *In re Galena Biopharma, Inc. Sec. Litig.*, 117

20   F. Supp. 3d 1145, 1203 (D. Or. 2015) addressed 20A insider trading claims not pleaded here.  And *W. Va.*

21   *Pipe Trades Health & Welfare Fund v. Medtronic, Inc*., 57 F. Supp. 3d 950, 981 (D. Minn. 2014) involved

22   manipulation of studies apart from statements.  Here, like in *Stoneridge Inv. Partners, LLC v. Scientific-*

23   *Atlanta*, 552 U.S. 148, 160-61 (2008), the alleged "scheme" was presented to the public only through a

24   public statement and could not have influenced investors on its own because the public only became aware

25   of it through the alleged false statement, which, like here, was the basis of a separate claim.  *See id.*

26   Plaintiffs' conclusory list of alleged deceptive conduct, Opp. 6-7, is the precise conduct that underlies

27   Plaintiffs' 10(b)5-b misstatements claim and, like in *Stoneridge*, "could not have influenced investor

28   conduct on its own."  *Id.*  Indeed, if Plaintiffs were correct, a scheme claim would be adequately pleaded

1   whenever a misstatements claim was pleaded.  That is not the law.

2   ## V.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

3           The Ninth Circuit has specifically rejected precisely what Plaintiffs attempt here: using "an

4   anonymous and self-interested short-seller's internet musings" to "show loss causation."  *Nektar*, 34 F.4th

5   at 832.  This attempt fails for several reasons.  *First*, Plaintiffs argue that each Short Report revealed "new"

6   information.  Opp. 24-25.  Even if that were true (and it is not), it would be insufficient.  In *BofI*, the Ninth

7   Circuit held that **even if** the *Seeking Alpha* posts "disclosed information that the market was not previously

8   aware of," their fundamental nature as short-seller criticism meant "it is not plausible that the market

9   reasonably perceived these posts as revealing the falsity of BofI's prior misstatements."  977 F.3d at 797;

10  *see also Nektar*, 34 F.4th at 840 (even if a short report "provide[d] new information to the market," and

11  "relates directly to the alleged false statements," it still was not corrective because "the character of the

12  report … rendered it inadequate.").  These issues aside, Plaintiffs **do not** explain what new information was

13  revealed in each Short Report, or how that information related to **any** alleged misstatement.

14          *Second*, Plaintiffs argue that the Short Reports reflect "extensive efforts by each of the investigative

15  teams," Opp. 25, which excuses the fact that the information in the reports is public (and produced by short

16  sellers, not investigative teams).  But as Plaintiffs' own authority makes clear, public information can only

17  be "corrective" where "other market participants had not done the same analysis."  Opp. 25 (citing *Equinix*,

18  2025 WL 39936, at *6).  Plaintiffs make no such allegations, nor do they explain why public information

19  "was not yet reflected in [defendant's] stock price."  *BofI*, 977 F.3d at 794-95; *see also* Mot. 24-25.

20          *Finally*, Plaintiffs argue that the Short Reports' self-serving determination that AppLovin was

21  engaged in fraudulent conduct is dispositive as to loss causation, *see* Opp. 25, but *Nektar* forecloses that

22  conclusion.  34 F.4th at 840.  Plaintiffs' reliance on their Supplement is similarly insufficient as a matter

23  of law:  in one sentence, Plaintiffs assert that an alleged inquiry into AppLovin based on the Short Reports,

24  AppLovin's end to its Array product, and that the e-commerce segment has "failed to scale" all corroborate

25  the Short Reports' accusations of fraud.  Opp. 25.  But Plaintiffs do not explain how those events—none

26  of which are admissions of fraud—corroborate the Short Reports' opinions.

27                                      **CONCLUSION**

28          Plaintiffs' Complaint should be dismissed with prejudice.

1

2    DATED: February 2, 2026                QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
3
                                    By:  */s/ Alexander Benjamin Spiro*
4
                                        Victoria Blohm Parker (Bar No. 290862)
5                                       vickiparker@quinnemanuel.com
                                        50 California Street, 22nd Floor
6                                       San Francisco, California 94111
                                        Telephone: (415) 875-6600
7
8                                       Alexander Benjamin Spiro (pro hac vice)
                                        Hope D. Skibitsky (pro hac vice)
9                                       Brenna Nelinson (pro hac vice)
                                        alexspiro@quinnemanuel.com
10                                      hopeskibitsky@quinnemanuel.com
                                        brennanelinson@quinnemanuel.com
11                                      295 5th Avenue
                                        New York, NY 10016
12                                      Telephone: (212) 849-7000
13
                                        *Attorneys for Defendants*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>APPENDIX C</u>

***Brownback v. AppLovin Corporation et al*:  Plaintiffs' Response to Defendants' Statement-By-Statement Arguments[1]**

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| 1 | 116 | 11/6/2024 | AppLovin | 3Q24 Earnings Report and Form 10-Q | Our Software Platform segment continued to grow in the third quarter, with Software Platform revenue of $835 million, up 66% year-over-year, ***driven by continued development of our AXON engine through ongoing self-learning and directed model enhancements***. These technology enhancements allowed our advertising partners to further increase the scale of their spend on our platform while consistently achieving their return on ad spend ("ROAS") goals. | ***Statement accurately reporting historical performance***. Br. 20-21.<br><br>***Statement attributing growth to AXON advancements and enhancements***. Br. 21-22. | Does not dispute that statement accurately reports historical performance.<br><br><br>Statement misleading because omitted "deceptive ad practices."  Opp. 2, 10-11. |
| 2 | 118 | 11/6/2024 | Foroughi | 3Q Earnings Call | We continue to execute well, expanding our core business and laying the groundwork for its sustained growth. Last quarter, I shared our confidence in achieving 20% to 30% year-over-year growth for the foreseeable future.<br><br>We continue to expect 4% to 5% quarterly growth through self-learning and market growth, ***with occasional step changes resulting from enhancements to our AXON algorithm***. | ***Forward-Looking Statement***. Br. 17-18.<br><br>***Statement attributing growth to AXON advancements and enhancements***. Br. 21-22. | Does not dispute that statement is forward looking.<br><br>Statement misleading because omitted "deceptive ad practices."  Opp. 2, 10-11.<br><br>*While ¶ 118 is generally referenced in the Opposition, Plaintiff does not specifically address Statement # 2.* |

---

[1] Paragraph references are to the Amended Complaint (Dkt. 61).  All text in the "Statement" column is taken from the Amended Complaint, including any bolding or italics.

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| 3 | 118 | 11/6/2024 | Foroughi | 3Q Earnings Call | ***This quarter, we saw one of those step changes, with meaningful growth driven by advancements to AXON***. While we can't predict the timing of these breakthroughs, we are in the early stages of AI software development, both within our company and in the broader industry. We expect ongoing research advancements to continue driving our technology forward. | ***Statement accurately reporting historical performance***. Br. 20-21.<br><br>***Statement attributing growth to AXON advancements and enhancements***. Br. 21-22. | Does not dispute that statement accurately reports historical performance.<br><br>Statement misleading because omitted "deceptive ad practices." Opp. 2, 10-11. |
| 4 | 118 | 11/6/2024 | Foroughi | 3Q Earnings Call | While we remain confident in 20% to 30% growth for mobile gaming advertisers alone, we're also exploring new areas, as shown by our recent ecommerce pilot. ***Early data has exceeded our expectations, with the advertisers in the pilot seeing substantial returns, often surpassing those from other media channels and, in many cases, experiencing nearly 100% incrementality from our traffic***. | ***Inactionable Statement of Opinion***. Br. 16-17.<br><br>***Statement accurately reporting historical performance***. Br. 20-21.<br><br>***Statement about advertiser returns and e-commerce pilot performance***. Br. 22. | Not inactionable opinion or puffery. Opp. 12-13.<br><br>Does not dispute that statement accurately reports historical performance.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13.<br><br>Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11. |
| 5 | 118 | 11/6/2024 | Foroughi | 3Q Earnings Call | ***We're increasingly confident this vertical will scale significantly in 2025 and become a strong contributor for us over the next year and beyond***. To support this, we've streamlined resources and are reallocating talent from other initiatives to our e-commerce go-to-market team. In the next few quarters, we'll launch a self-service platform, | ***Inactionable Statement of Opinion***. Br. 16-17.<br><br>***Forward-Looking Statement***. Br. 17-18. | Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13.<br><br>Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | opening global opportunities for advertisers of all sizes. | | *While ¶ 118 is generally referenced in the Opposition, Plaintiff does not specifically address Statement # 5.* |
| 6 | 119 | 11/6/2024 | Stumpf | 3Q Earnings Call | During the quarter, ***improvements in our AXON technology, driven by ongoing self-learning, and enhancements by our engineering team contributed to further growth of our software platform***. This segment generated $835 million in revenue and $653 million in adjusted EBITDA, achieving a 78% margin and growing 66% in revenue and 79% in adjusted EBITDA from the same period last year. Quarter-over-quarter flow-through from revenue to adjusted EBITDA was 107%. | ***Statement accurately reporting historical performance***. Br. 20-21.<br><br>***Statement attributing growth to AXON advancements and enhancements***. Br. 21-22. | Does not dispute that statement accurately reports historical performance.<br><br>Statement misleading because omitted "deceptive ad practices." Opp. 2, 10-11. |
| 7 | 120 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | **[BTIG Analyst:]** I would assume that while e-commerce is in pilot phase, there's really very little revenue contribution. Is that right? And then, if so, for the existing gaming and nongaming businesses, was one a bigger contributor this quarter? Meaning, was one more responsive, I guess, to the performance improvements that you delivered?<br><br>**[Foroughi:]** Yes. So e-commerce is still in pilot, as we touched on last quarter. I'll say, before jumping into impact this quarter, it's the – ***it's a super compelling product***. Our team has done an amazing job building it. ***In all my years, it's the*** | ***Inactionable Puffery and Corporate Hyperbole***. Br. 15-16.<br><br>***Inactionable Statement of Opinion***. Br. 16-17. | Not inactionable opinion or puffery. Opp. 12-13.<br><br>Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | ***best product I've ever seen released by us, fastest growing,*** but it's still in pilot. So compared to the scale of our business inside gaming, it's too early for ecommerce to make a financial impact that's material. | | |
| 8 | 120 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | Now our technology continues to improve. We've got a long road map of enhancements that we can deliver to this platform because, like I said in the talk script, these AI technologies are just really, really early in existence, both internally and externally. And all research advancements are going to let us really expand the business inside the gaming category. ***E-commerce, on the other hand, is looking so strong that it's something that we think will be impactful to the business financially '25 and then for the long term.*** | ***Inactionable Puffery and Corporate Hyperbole.*** Br. 15-16.<br><br>***Inactionable Statement of Opinion.*** Br. 16-17.<br><br>***Forward-Looking Statement.*** Br. 17-18. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13. |
| 9 | 122 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | **[Citigroup Analyst:]** It's exciting to hear that you're excited about your ecommerce pilot. I just had one question. As investors sort of think about the ramp of that business, is there anything about it that could ramp more slowly even if you're more excited about the efficacy of the product? And I'm thinking specifically about your brand just not being known in e-commerce circles and maybe you have to spend marketing dollars or hire a sales team or something that's just different than the brand name you have within the | ***Inactionable Puffery and Corporate Hyperbole.*** Br. 15-16.<br><br>***Statement about advertiser returns and e-commerce pilot performance.*** Br. 22. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | gaming ecosystem that could make it ramp more slowly, even though it might be a better product or as good of a product. Thanks.<br><br>**[Foroughi:]** So look, e-commerce is a new category for us. So we do need brand awareness. That's a given. But our products are really good. And the key to when we started the business and doing so well in gaming is we took a really long-term approach. ***We said we're going to build a product that's so good that advertisers have to have it. We're not going to invest heavily in sales, and we're going to organically grow over the years.*** And we've done that. | | |
| 10 | 122 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | And you can look at the trajectory of the company since we've been public, but even if you backdate it to when we started, every year, ***we've gotten bigger and gotten more penetration into the gaming category and done it organically.*** So when we look at e-commerce, we're not in any sort of rush. ***Now that said, if you check even Twitter today, there's tons of noise from e-commerce brands saying, in our pilot, they're seeing as much scale and a strong ROAS as they're seeing anywhere in the world today on their user acquisition buys.*** | ***Statement about advertiser returns and e-commerce pilot performance.*** Br. 22. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13.<br><br>*While ¶ 122 is generally referenced in the Opposition, Plaintiff does not specifically address Statement # 10.* |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | So when you have that kind of performance, you're delivering an automated return on ad spend model approach to a very large, fragmented category, like ecommerce, that desperately needs another marketing channel after having so many promises in the past that haven't panned out. It's something that's probably going to get a lot of noise and be very attractive to the other side very quickly. | | |
| 11 | 123 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | **[Morgan Stanley Analyst:]** So the question is just on that e-commerce pilot. I guess, given that you're, based on the results of the pilot, successfully expanding into other verticals and using AXON and the data available to you to target other types of advertising outside of gaming, do you have any reason to believe or any doubt about the ability to expand the model to cover other verticals other than just e-commerce? Because it seems like, given the size of the audience and just the amount of data that you have to observe, it shouldn't necessarily just be limited to e-commerce. If you can move beyond gaming, do you believe you can move to other verticals?<br><br>**[Foroughi:]** 10 years from now, we think every advertiser that has a transactional model, whether it's collecting an e-mail address for a newsletter or a local pizza | ***Statement about advertiser returns and e-commerce pilot performance***. Br. 22.<br><br>***Inactionable Statement of Opinion***. Br. 16-17.<br><br>***Forward-Looking Statement***. Br. 17-18. | Not addressed in Plaintiffs' Opposition. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | shop or an e-commerce brand or a gambling brand or a gaming brand or anything across any category, can buy on our platform and do it at scale. So there's no limitation to the power of the math and the technology that we've written.<br><br>***But the only limitation, the only reason why we referenced it as e-commerce today is the go-to-market***. We do want to be thoughtful about how we penetrate new categories. But even inside e-commerce, we're not approaching it as we're only going to go to fashion and then we're going to go to beauty. We're approaching it as ***we're going to go to the entirety of e-commerce, and then we're going to go to the entirety of the rest of the categories of advertising that matter***. And then hopefully, we're going to go to the whole world of transactional businesses over time. | | |
| 12 | 124 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | [UBS Analyst:] Great. Thanks for taking the question. Maybe another one here on e-commerce. Adam, I think you had said on 2025, we should be starting to see a material contribution. We've been getting a lot of questions from investors. Just kind of how to be thinking about material and just any tighter of a time frame you could maybe help us understand? I know 1Q is seasonally weak for ecommerce, but | ***Inactionable Puffery and Corporate Hyperbole***. Br. 15-16.<br><br>***Inactionable Statement of Opinion***. Br. 16-17.<br><br>***Forward-Looking Statement***. Br. 17-18. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | could it be as soon as 1Q that we start to see a contribution from that business?<br><br>**[Foroughi:]** Like we've said, we're confident in the 20% to 30% in gaming alone. This is sort of additive. ***I also just said it's the fastest-growing product I've ever seen. So it looks really good. Now if we were scaled in e-commerce, we'd have seasonality in the business. We don't today really have seasonality in the business***. When you're in pilot, you're talking about tens to hundreds total shops. And so we're really just early stages here, but the performance is really strong.<br><br>So it's hard for us to predict how quickly it can ramp. And I do like to remind people that when you have a scaled business, I think, run rate-wise, now $3.3 billion or so on this advertising business, that's really a lot of net revenue that we're reporting, gross it up to total ad dollars on the platform.<br><br>And for e-commerce to really drive material impact, and let's define that by 10% plus, is going to take some time to ramp up to. ***But we've never seen anything that looks like this in terms of strength in market. And so if it does scale the way we think it will, it's going to make an impact in '25***. | ***Statement about advertiser returns and e-commerce pilot performance***. Br. 22. | |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| 13 | 126 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | **[Cannonball Research Analyst:]** So can you help us understand this e-commerce opportunity? Is it just taking AXON 2.0 as it is and just making minor tweaks so that it just selects for targeted potential e-commerce customers? Or is it a big overhaul? And then how much of an advantage will you be able to take from the gaming and take it to e-commerce? And who – if you can, whom will you be competing against? Who is currently taking up those budgets?<br><br>**[Foroughi:]** So starting with like competition. I don't think, to date, anyone has delivered a solution inside mobile games for categories outside of gaming. And so we're going into greenfield. And what's exciting about these shops, and I said this on my talk track, when they're marketing on our platform today, this is a new audience.<br><br>They're not otherwise able to reach this audience in that moment in time. So when we're able to show an ad for them and do it precisely and measure it all, there's an immense amount of incremental value for them from that advertisement. So it's a really strong solution for them.<br><br>So it will continue to make our platform able to monetize that audience better, which is going to be a huge boom for our business and very healthy for the | ***Inactionable Statement of Opinion***. Br. 16-17.<br><br>***Inactionable Puffery and Corporate Hyperbole***. Br. 15-16.<br><br>***Statement about platform scalability and market opportunity***. Br. 22-23. | Not addressed in Plaintiffs' Opposition. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | publisher as well, who will generate more dollars from their users but also get more diversity of content to their users. ***And in this case, if you're a game publisher, an ecommerce ad is not for someone who is building another game, it's for something that is completely different than your product. So it's a great win-win for all parties involved***.<br><br>On the technology side, I never like to talk about complexities of technology. I certainly wouldn't say anything we do is simple. I don't think a lot of people in the world, I mean, maybe hundreds, max, engineers understand how to build these types of platforms. We've seen very few, only a handful of software implementations that are compelling at scale inside what we're calling these AI technologies, and we're one of those. | | |
| 14 | 126 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | On the technology side, I never like to talk about complexities of technology. I certainly wouldn't say anything we do is simple. I don't think a lot of people in the world, I mean, maybe hundreds, max, engineers understand how to build these types of platforms. We've seen very few, only a handful of software implementations that are compelling at scale inside what we're calling these AI technologies, and we're one of those. | ***Inactionable Statement of Opinion***. Br. 16-17.<br><br>***Statement about platform scalability and market opportunity***. Br. 22-23. | Not addressed in Plaintiffs' Opposition. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | ***And our engineers are building really complicated technologies that can do a lot more than just the first implementation did, which was drive performance marketing to gaming***. So we think there's going to be a lot of expansion opportunity over time. The technology platform is really powerful, and math is not limited to categories. So there's going to be, I think, years of growth ahead of us. | | |
| 15 | 127 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | [Oppenheimer & Co. Analyst:] [O]n e-commerce, where are you spending or investing in commerce? And is there any bottlenecks you're trying to break through as you ramp up e-commerce and then get it to commercial stage?<br><br>[Foroughi:] *No. Like I said, it's the most exciting product that we've ever launched. We've never seen this kind of data on a new product*. And if you recall, I mean, I don't voice optimism much since we've gone public on new products. We've talked about a lot of products. We are a very entrepreneurial company. We will try a lot of things. But the last time I talked about a really good product was when we launched AXON 2.0. That turned out pretty good for us, our company, our partners and our investors. | ***Inactionable Puffery and Corporate Hyperbole***. Br. 15-16. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13.<br><br>*While ¶ 127 is generally referenced in the Opposition, Plaintiff does not specifically address Statement # 15.* |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| 16 | 127 | 11/6/2024 | Foroughi | Question-and-answer portion of 3Q Earnings Call | *So if we're talking about this product as being the most compelling one we've seen yet, that you can assume we're not running into bottlenecks, other than like we just don't have the capacity yet in terms of human capital and every solution component automated to scale it out as quickly as the market demands. So we've got to line out the door of companies that want to jump on to this platform.* | ***Inactionable Puffery and Corporate Hyperbole.*** Br. 15-16. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13. |
| 17 | 128 | 11/6/2024 | Foroughi | 3Q Earnings Call | According to Foroughi, AppLovin "built maybe the most innovative advertising technology that the world has yet seen," which would enable the Company "***to service tens of thousands to hundreds of thousands to millions of advertisers on [its] platform.***" | ***Inactionable Puffery and Corporate Hyperbole.*** Br. 15-16.<br><br>***Forward-Looking Statement.*** Br. 17-18. | Not addressed in Plaintiffs' Opposition. |
| 18 | 130 | 11/6/2024 | Foroughi & Stumpf | 3Q24 Form 10-Q | We are subject to laws and regulations concerning privacy, information security, data protection, consumer protection, advertising, tracking, targeting, and protection of minors, and these laws and regulations are continually evolving. ***Our actual or perceived failure to comply*** with these laws and regulations ***could*** adversely affect our business, financial condition, and results of operations. | ***Risk Factors.*** Br. 23-24. | Risk disclosed as hypothetical had materialized. Opp. 14. |
| 19 | 131 | 11/6/2024 | Foroughi & Stumpf | FY24 Form 10-K | These warnings were written as hypothetical risks i.e., that with regard to "privacy policies and terms of service | ***Risk Factors.*** Br. 23-24. | Risk disclosed as hypothetical had materialized. Opp. 14. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | located ***in application store fronts***, within our mobile games, and on our respective websites," privacy violations could cause users to lose trust in the Company which ***could*** adversely affect its business and operations:<br><br>***Any failure or perceived failure by us to comply with our terms of service or privacy policy, or with applicable laws, regulations, or legal, contractual, or other actual or asserted obligations to users or third parties***, concerning privacy, information security, data protection, consumer protection, or protection of minors; or our privacy-related legal obligations, or any compromise of security that results in the unauthorized release or transfer of personal information or other user data, may result in governmental enforcement actions or other proceedings, claims, demands, and litigation by private parties, or public statements against us by consumer advocacy groups or others and ***could cause our users to lose trust in us, which could adversely affect our business, financial condition, or results of operations***. Additionally, if third parties we work with, such as users, developers, vendors, service providers, or other business partners violate applicable laws or our policies, such violations may also put our users' information at risk and could in turn adversely affect our | | |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | reputation, business, financial condition, and results of operations. | | |
| 20 | 135 | 12/11/2024 | Foroughi | Nasdaq Investor Conference | **[Morgan Stanley Analyst:]** Let's shift to a topic I think a lot of people in the room were probably very excited about, which is e-commerce advertising. So let's just start with, what are you doing in e-commerce? How are the early tests going? And why do you think AppLovin will win in this category?<br><br>**[Foroughi:]** Yeah. So obviously, there's a lot of excitement around this. But let me start with why we ended up talking about expanding outside of gaming to begin with. When we launched AXON 2.0, we saw the power of this technology, and this is what I call personalization technology. It's a recommendation engine that's really powerful.<br><br>Now if you have a recommendation technology and you give it just one category of content, it can't really do what it's designed to do. An analogy would be it's easy to forget that TikTok once was Musical.ly. When they bought that company for under $1 billion, it was niche. They only showed music videos. Then they opened up to all types of content and let the technology do the rest to scale the product. | ***Inactionable Puffery and Corporate Hyperbole***. Br. 15-16.<br><br>***Forward-Looking Statement***. Br. 17-18.<br><br>***Inactionable Statement of Opinion***. Br. 16-17. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>*While ¶ 135 is generally referenced in the Opposition, Plaintiff does not specifically address Statement # 20.* |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | *Well, we've got a similar technology, it's very powerful, and we let it only show gaming advertisements to the consumer. So once we saw the power of this technology, we said, look, this thing is going to be able to do anything. So let's get it to be open to everything*. | | |
| 21 | 135 | 12/11/2024 | Foroughi | Nasdaq Investor Conference | *And so we started building the tools and technologies to enable any website with the business model to be able to advertise on our platform and reach this really large audience of 1.4 billion daily actives through us and do it on a performance basis*. And so we had a lot of confidence that we were able to – we were going to be able to do this. We did that work. We rolled it out. *And now there's been a lot of noise on Twitter from customers that are early in a pilot that we're running that are seeing phenomenal results*.<br><br>And so I'd urge investors to go to Twitter to – and look up AppLovin and just see the commentary to understand really how performant this product is for those advertisers. We haven't talked much about the details outside of that. But I did say on our earnings call last quarter, *this is the best and fastest-growing product we've ever released. That includes the algorithm itself*. So we're really excited about what the potential is here. | *Inactionable Puffery and Corporate Hyperbole*. Br. 15-16.<br><br>*Inactionable Statement of Opinion*. Br. 16-17.<br><br>*Statement about advertiser returns and e-commerce pilot performance*. Br. 22.<br><br>*Statement accurately reporting historical performance*. Br. 20-21. | Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13.<br><br>Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Does not dispute that statement accurately reports historical performance. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| 22 | 136 | 12/11/2024 | Foroughi | Nasdaq Investor Conference | **[Morgan Stanley Analyst:]** Great. So when we think about your machine learning engine, which is branded as AXON. So when we think about AXON and the ability to extend to e-commerce, does that imply that you could extend the business to other non-gaming ad verticals? And if so, how broad is that opportunity?<br><br>**[Foroughi:]** Yeah. We think it's really broad. ***We expect, now that we've seen the data that we've seen, that any company that is online with a website that has a business model, that drives to some KPI will be able to buy advertising through our platform.*** Now that KPI may vary. We've chosen specifically to go after mid-market direct-to-consumer shops right now.<br><br>Now their KPI is revenue and profit. They want to advertise and get users and know that they're making an incremental profit on that advertising. To us, that's the hardest KPI because it's so far down the funnel. Now you can imagine a different type of advertiser who's sending e-mails to sell financial tips could come online. Well, we can certainly sell e-mails. That's easier to go build the cost per lead model, and that exists in the system already.<br><br>Another advertiser, like a streamer, might want to sign up subscribers. Cost per | ***Forward-Looking Statement.*** Br. 17-18.<br><br>***Statement about advertiser returns and e-commerce pilot performance.*** Br. 22.<br><br>***Statement about platform scalability and market opportunity.*** Br. 22-23. | Not inactionable under PSLRA safe harbor. Opp. 13.<br><br>Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable opinion or puffery. Opp. 12-13. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | registration is also supported in the system. ***So because we have a KPI-based advertising model, it's completely automated, and we've proven we can expand out to web and make it work across a wide variety of different types of business models at all sorts of different prices in terms of cost-per-goods sold and revenue-per-goods sold, we know now that we can go out and expand this product to millions and millions of customers in the future.*** | | |
| 23 | 138 | 2/12/2025 | Foroughi | 4Q24 Shareholder Letter | From the outset, we committed to building products that not only automated marketing but also delivered measurable incremental earnings. We wanted to design a platform to help our ***customers spend every dollar on acquiring users profitably and transparently.*** This principle continues to guide the innovations we deliver to our partners. | ***Inactionable Statement of Opinion.*** Br. 16-17. | Not addressed in Plaintiffs' Opposition. *While Statement # 23 is not addressed, other portions of ¶ 138 are referenced in the Opposition.* |
| 24 | 138 | 2/12/2025 | Foroughi | 4Q24 Shareholder Letter | ***These principles were on full display in 2024, a year that not only brought significant growth—marked by a remarkable 75% increase in revenue in our advertising business—but also showcased the transformative potential of AI and automation.*** We've spent several quarters optimizing our teams to embrace automation, knowing the world is moving in this direction. We believe | ***Statement accurately reporting historical performance.*** Br. 20-21. | Statement misleading because omitted "deceptive ad practices." Opp. 2, 10-11. Does not dispute that statement accurately reports historical performance. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | those who view these technologies as allies, rather than threats, will unlock extraordinary potential and we aim to lead by example. | | |
| 25 | 139 | 2/12/2025 | Foroughi | 4Q24 Shareholder Letter | Over the last few years, our team has achieved extraordinary things. *We've built an advertising model as powerful as any advertising AI model in the world, delivering measurable success for our partners.* | ***Inactionable Puffery and Corporate Hyperbole.*** Br. 15-16. | Not addressed in Plaintiffs' Opposition. |
| 26 | 139 | 2/12/2025 | Foroughi | 4Q24 Shareholder Letter | Early adopters in gaming and direct-to-consumer commerce *have already seen the impact of our technology,* and our mission is clear: to onboard every business that wants to drive measurable growth.<br><br>We are driven by the belief that our technology can positively impact the global economy. By helping businesses of all kinds efficiently connect with their audiences, we unlock their potential to grow and thrive. | ***Statement accurately reporting historical performance.*** Br. 20-21. | Not addressed in Plaintiffs' Opposition. |
| 27 | 141 | 2/12/2025 | Foroughi | Q4 Earnings Call | Q4 was a major milestone, arguably our most foundational period since the AXON upgrade in 2023. For the first time, *we captured meaningful holiday shopping advertising dollars* and witnessed the impact of an advertising category beyond solely gaming contributing to our growth. | ***Statement accurately reporting historical performance.*** Br. 20-21.<br><br>***Inactionable Statement of Opinion.*** Br. 16-17. | Not addressed in Plaintiffs' Opposition.<br><br>*While Statement # 27 is not addressed, other portions of ¶ 141 are referenced in the Opposition.* |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | I'm sure many of you are curious about how much revenue our e-commerce category contributed.<br><br>While we're not breaking out revenue by vertical because that's not how we view our business, I'd like to provide some perspective. We operate a platform that reaches over 1 billion people in mobile games daily, with their engagement times comparable to social networks. | | |
| 28 | 141 | 2/12/2025 | Foroughi | Q4 Earnings Call | Historically, most of our ads focused on advertising for other games, but now we're attracting a broader set of advertisers. ***Q4 results show that our models can perform in other categories, in addition to continuing to improve performance for our gaming customers.*** This breakthrough is only the beginning. We've now also validated that our platform success isn't only limited to direct-to-consumer brands.<br><br>***Early pilots have shown positive outcomes for a range of advertisers, suggesting that any business in any vertical can harness the power of our platform. This opens up a massive opportunity as there are over 10 million businesses worldwide you advertise online that could eventually use our platform profitably.*** | ***Statement about platform scalability and market opportunity***. Br. 22-23.<br><br>***Statement accurately reporting historical performance***. Br. 20-21.<br><br>***Statement about advertiser returns and e-commerce pilot performance***. Br. 22. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Does not dispute that statement accurately reports historical performance.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13. |

19

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| 29 | 141 | 2/12/2025 | Foroughi | Q4 Earnings Call | By delivering incremental value, we position ourselves as an engine for growth. It's a win-win for brands, consumers and shareholders. ***These early results solidify our vision of building one of the most influential marketing platforms in the world. Where we once focus on gaming, we're now positioning ourselves to serve the entire global advertising economy.*** Importantly, the users engaging with our network aren't just shifting existing purchases. They're discovering new products while playing the games they love, generating truly incremental demand. | ***Inactionable Puffery and Corporate Hyperbole.*** Br. 15-16.<br><br>***Forward-Looking Statement.*** Br. 17-18. | Not addressed in Plaintiffs' Opposition.<br><br>*While Statement # 27 is not addressed, other portions of ¶ 141 are referenced in the Opposition.* |
| 30 | 141 | 2/12/2025 | Foroughi | Q4 Earnings Call | By enabling these discoveries, we're expanding the global economy for consumers and advertisers alike. ***Demand from advertisers wanting to join our platform is high.*** Currently, our systems are still being fully developed and lack the full self-service capabilities needed to handle growth at scale. Our priority this year is to develop and roll out more automated tools to allow countless new businesses to tap into our platform. | ***Statement about advertiser demand.*** Br. 23. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13. |
| 31 | 141 | 2/12/2025 | Foroughi | Q4 Earnings Call | In line with this expanding focus on advertising, we've been assessing how best to invest our resources to serve the needs of a global client base. ***Seven years ago, we began acquiring gaming studios to help train our earliest machine learning models, an invaluable step in*** | ***Statement accurately reporting historical performance.*** Br. 20-21.<br><br>***Inactionable Statement of Opinion.*** Br. 16-17. | Not addressed in Plaintiffs' Opposition.<br><br>*While Statement # 27 is not addressed, other portions of ¶ 141 are referenced in the Opposition.* |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | *shaping the AI that underpins our AXON platform.*<br><br>However, we've never been a game developer at heart. We have immense respect for the creativity it takes to build games, including from teams in our studios. Today, we're announcing we've signed an exclusive term sheet to sell all of our apps business. | | |
| 32 | 142 | 2/12/2025 | Foroughi | Question-and-answer portion of Q4 Earnings Call | Foroughi stated that the Company's e-commerce product was "*seeing success across any category that comes on to the platform,* which gives us a lot of confidence . . . as we go through the year." Stumpf similarly maintained that the Company still felt "*very confident . . . [in] the ability for us to contribute a material portion of revenue from the e-commerce opportunity in 2025.*" | ***Inactionable Puffery and Corporate Hyperbole.*** Br. 15-16.<br><br>***Inactionable Statement of Opinion.*** Br. 16-17.<br><br>***Forward-Looking Statement.*** Br. 17-18. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13. |
| 33 | 143 | 2/12/2025 | Foroughi | Q4 Earnings Call | We're really, really early still in AI development and research, both inside our company and then obviously externally, too. This is not a field that's mature.<br><br>It's early in its existence. It's only going to get better. And when our models get better, we've all seen the impact to revenue. And the other piece is, we've always been a closed managed platform, specifically for mobile games. *We now have a lot of proof of life in e-commerce.* | ***Forward-Looking Statement.*** Br. 17-18.<br><br>***Inactionable Statement of Opinion.*** Br. 16-17.<br><br>***Statement accurately reporting historical performance.*** Br. 20-21. | Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11.<br><br>Not inactionable opinion or puffery. Opp. 12-13.<br><br>Does not dispute that statement accurately reports historical performance.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | You've seen it on Twitter, a lot of the noise from customers that are in.<br><br>But we have not let a lot of customers onto the platform yet as we've been on pilot. ***As we go more and more open and start attracting thousands and tens of thousands, hundreds of thousands of customers to come on over the coming quarters and years, the business is going to continue to show compelling growth. We look at it as one single business and better monetizing the 1 billion-plus daily actives that we see. We don't think about it as revenue from each category matters.*** | | |
| 34 | 144 | 2/12/2025 | Foroughi | Q4 Earnings Call | While Defendants were opaque about the number of companies included in the ecommerce pilot, Foroughi claimed ***"we've got just customers coming to us[,] [s]o there's a long, long line out the door."*** | ***Inactionable Puffery and Corporate Hyperbole.*** Br. 15-16.<br><br>***Statement about advertiser demand.*** Br. 23. | Not inactionable opinion or puffery. Opp. 12-13.<br><br>Not inactionable under PSLRA safe harbor. Opp. 13.<br><br>Statement misleading because "e-commerce pilot growth was not representative of the actual growth." Opp. 11. |
| 35 | 147 | 2/26/2025 | Foroughi | CEO Blog Post | Consumer Experience: ***We earn revenue based on the value we drive—not on clicks or mere impressions. Our advertisements are designed to generate real engagement and revenue for our advertisers. Every download results from an explicit user choice—*** whether via the | ***Inactionable Puffery and Corporate Hyperbole.*** Br. 15-16.<br><br>***Inactionable Statement of Opinion.*** Br. 16-17. | Statement contradicted by SEC filings. Opp. 14-15.<br><br>Does not dispute that statement is puffery or opinion. |

| Statement No. | ¶ | Date | Speaker | Source | Statement | Reason Not Actionable | Plaintiffs' Response |
|---|---|---|---|---|---|---|---|
| | | | | | App Store or our Direct Download experience. ***Our economic model demands that ads lead to genuine, high-intent engagement, ensuring our campaigns deliver meaningful, measurable results.*** | | |
| 36 | 147 | 2/26/2025 | Foroughi | CEO Blog Post | E-commerce Pilot: ***Our e-commerce pilot is performing exceptionally well. The current requirement for a minimum monthly media spend is designed to justify the resources needed for manual onboarding.*** We plan to expand our self-service tools and gradually lift these requirements over the year. To highlight our success, ***in December, we reached a run rate of roughly $1 billion a year of gross advertiser spend in the e-commerce category alone from around 600 customers. The growth potential in the coming years is substantial. Moreover, the speed of this growth clearly demonstrates the legitimacy and effectiveness of our platform.*** | ***Inactionable Statement of Opinion***. Br. 16-17.<br><br>***Forward-Looking Statement***. Br. 17-18.<br><br>***Statement accurately reporting historical performance***. Br. 20-21. | Statement contradicted by source code, permission structures, and user complaints. Opp. 14-15.<br><br>Does not dispute that statement is forward-looking or accurately reports historical performance. |