QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
Victoria Blohm Parker (Bar No. 290862)
vickiparker@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600

Alexander Benjamin Spiro (pro hac vice)
Hope D. Skibitsky (pro hac vice)
Brenna Nelinson (pro hac vice pending)
alexspiro@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
brennanelinson@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| BEN BROWNBACK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLOVIN CORPORATION, ADAM FOROUGHI, HERALD CHEN, MATTHEW STUMPF, and VASILY (BASIL) SHIKIN,<br><br>Defendants. | Case No. 4:25-cv-02772-HSG<br><br>**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION TO SUPPLEMENT THE AMENDED COMPLAINT**<br><br>Date: March 12, 2026<br>Time: 2:00 p.m.<br>Location: Courtroom 2, 4th Floor<br>Before: Honorable Haywood S. Gilliam |

# TABLE OF CONTENTS

**Page**

FACTUAL AND PROCEDURAL BACKGROUND...................................................................2

LEGAL STANDARD..............................................................................................................3

ARGUMENT............................................................................................................................3

I.    THE PROPOSED SUPPLEMENT IS FUTILE .................................................................3

II.   PLAINTIFFS' PROPOSED SUPPLEMENT PREJUDICES DEFENDANTS ..................6

III.  PLAINTIFFS' UNDUE DELAY FURTHER COMPOUNDS THE PREJUDICE ............8

IV.  PLAINTIFFS SHOULD NOT BE PERMITTED FURTHER LEAVE TO AMEND..................................................................................................................................9

CONCLUSION........................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

### Cases

*Alzheimer's Inst. of Am. v. Elan Corp. PLC*,
   274 F.R.D. 272 (N.D. Cal. 2011) ............................................................................................. 7

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
   465 F.3d 946 (9th Cir. 2006) .................................................................................................... 8

*Bajjuri v. Raytheon Techs. Corp.*,
   641 F. Supp. 3d 735 (D. Ariz. 2022) ........................................................................................ 5

*In re Bristol-Myers Squibb Sec. Litig.*,
   228 F.R.D. 221 (D.N.J. 2005) ................................................................................................... 8

*In re Champion Enters., Inc. Sec. Litig.*,
   145 F. Supp. 2d 871 (E.D. Mich. 2001) ................................................................................... 8

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................................. 3, 7

*Foman v. Davis*,
   371 U.S. 178 (1962) .................................................................................................................. 3

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*,
   980 F. Supp. 2d 1160 (E.D. Cal. 2013) ................................................................................ 7, 8

*Herrera v. Florence McClure Women's Corr. Ctr. Facility*,
   2024 WL 3459060 (D. Nev. July 17, 2024) ............................................................................. 7

*Hershfang v. Citicorp*,
   767 F. Supp. 1251 (S.D.N.Y. 1991) ......................................................................................... 5

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
   2017 WL 1536223 (D.N.J. Apr. 27, 2017) .............................................................................. 5

*In re Intel Corp. Sec. Litig.*,
   792 F. Supp. 3d 1008 (N.D. Cal. 2025) ................................................................................. 10

*Jackson v. Bank of Haw.*,
   902 F.2d 1385 (9th Cir. 1990) .................................................................................................. 3

*Keith v. Volpe*,
   858 F.2d 467 (9th Cir. 1988) .................................................................................................... 3

*Lyon v. U.S. Immigr. & Customs Enf't*,
   308 F.R.D. 203 (N.D. Cal. 2015) ............................................................................................. 3

*In re Metawave Commc'ns Corp. Sec. Litig.*,
   298 F. Supp. 2d 1056 (W.D. Wash. 2003) ................................................................... 6

*In re Netflix, Inc. Sec. Litig.*,
   647 F. App'x 813 (9th Cir. 2016) ................................................................................ 4

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
   2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ............................................................. 3

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ...................................................................................... 6

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
   491 F. Supp. 3d 738 (S.D. Cal. 2020) ......................................................................... 3

*Plumbers & Pipefitters Loc. Union v. Zimmer*,
   673 F. Supp. 2d 718 (S.D. Ind. 2009) ......................................................................... 6

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*,
   694 F. Supp. 2d 287 (S.D.N.Y. 2010) ......................................................................... 5

*Premca Extra Income Fund LP v. iRobot Corp.*,
   763 F. Supp. 3d 121 (D. Mass. 2025) ......................................................................... 5

*In re Read-Rite Corp.*,
   335 F.3d 843 (9th Cir. 2003) ...................................................................................... 4

*In re Vantive Corp. Sec. Litig.*,
   110 F. Supp. 2d 1209 (N.D. Cal. 2000) ...................................................................... 6

*Youngers v. Virtus Inv. Partners Inc.*,
   195 F. Supp. 3d 499 (S.D.N.Y. 2016) ......................................................................... 5

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ....................................... 9

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B) .................................................................................................. 7

**Other Authorities**

Rule 9(b) ............................................................................................................................ 10

Rule 12(b)(6) ....................................................................................................................... 3

Rule 15 ................................................................................................................. 1, 2, 3, 7, 9, 10

-iii-    Case No. 4:25-CV-02772-HSG
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT

**PRELIMINARY STATEMENT**

Plaintiffs' Motion to Supplement is a transparent attempt to salvage their fatally deficient Complaint through the backdoor. Having failed to plead particularized facts supporting their securities fraud claims, Plaintiffs now seek to inject into this litigation a handful of post-hoc alleged "developments" that do nothing to cure the fundamental defects identified in Defendants' motion to dismiss.

All of the new allegations contained in the proposed supplement became public in October and early November 2025—before Defendants filed the motion to dismiss on November 14, 2025. Yet Plaintiffs waited until December 22, 2025—over five weeks after Defendants filed the motion to dismiss and *before* Plaintiffs' Opposition was due—to seek consent. Even then, Plaintiffs waited another three weeks to file their proposed supplement to coincide with the filing of their Opposition. This was no coincidence: the proposed supplement features prominently throughout Plaintiffs' Opposition, forcing Defendants into the impossible position of addressing new allegations for the first time in a reply brief.

Plaintiffs could have sought leave to amend under Rule 15(a). But doing so would cause Plaintiffs to forfeit their right to amend the Complaint as a matter of course. By instead styling their additions to the Complaint as a supplement, rather than an amendment, Plaintiffs seek to incorporate new allegations to support their deficient claims, while preserving their ability to (again) amend the Complaint and avoid dismissal with prejudice if the Court grants Defendants' motion to dismiss. The Court should not permit Plaintiffs to circumvent the federal rules through strategically re-labeling an amendment as a supplement.

The Court should deny this motion for three independent reasons:

*First*, the proposed supplement is futile. The new allegations add nothing but additional layers of speculation atop the same unreliable Short Reports already challenged in the motion to dismiss. Uncorroborated media reports of alleged regulator inquiries do not make the underlying claims reliable.

*Second*, permitting Plaintiffs to supplement the Complaint would prejudice Defendants. The supplemental allegations are not peripheral; they form the foundation for Plaintiffs' Opposition, including a "scheme" theory that is barely mentioned in the operative Complaint. Yet Defendants would only have one opportunity to respond—in a reply brief with strict page limits. This is not the "ample opportunity" Plaintiffs claim; it is a disadvantage engineered by Plaintiffs to hinder Defendants' ability to effectively address all of Plaintiffs' scattershot claims.

*Third*, Plaintiffs' request is not timely.  The facts underlying the proposed supplement became public in October and November 2025—before Defendants filed the motion to dismiss and months before Plaintiffs' Opposition was due.  Plaintiffs thus had ample opportunity to seek leave to supplement or amend before Defendants moved to dismiss, or, at worst, immediately afterwards.

*Finally*, should the Court nonetheless grant the Motion to Supplement, Defendants respectfully request that the briefing schedule be reset to permit Defendants to file a new motion to dismiss, or, alternatively, that the Court treat the supplement as Plaintiffs' amendment as a matter of course, pursuant to Rule 15(a)(1).

The Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2025, Plaintiffs filed the (consolidated, amended) Complaint asserting claims against AppLovin and certain of its officers under Section 10(b) of the Securities Exchange Act of 1934. Dkt. 61 ("Compl.").  The Complaint's allegations of fraud rely exclusively on four short seller reports (the "Short Reports") published between February and March 2025.  Compl. ¶¶ 60-91.

Pursuant to the briefing schedule stipulated to by the Parties and ordered by the Court, Dkt. 46, on November 14, 2025, Defendants moved to dismiss the Complaint for failure to plead securities fraud claims with the particularity required by the PSLRA. Dkt. 71 ("MTD").  Among other things, Defendants' motion to dismiss challenges the Complaint's reliance on the Short Reports as failing to satisfy the PSLRA's particularity requirements because, *inter alia*, the Reports were published anonymously, disclaimed their own accuracy, and were authored by individuals (some anonymous) with a concrete financial incentive to attempt to drive down AppLovin's public stock price. MTD at 14-15.

Plaintiffs took no action to amend their Complaint or seek leave to supplement during October or November 2025.  Instead, at the height of the holiday season, on December 22, 2025, Plaintiffs contacted Defendants seeking consent to file a supplemental pleading. *See* Janoski Decl., Dkt. 76-1.

Plaintiffs seek to supplement the Complaint with allegations concerning events that were publicly reported ***prior*** to Defendants' motion to dismiss: an October 6, 2025 Bloomberg article claiming that the SEC had "been probing the data-collection practices" of AppLovin, Suppl. ¶ 241, without any representation as to the source of that information; an October 15, 2025 Bloomberg article reporting that

AppLovin had shut down its Array product, Suppl. ¶ 244; an October 19, 2025 New York Post article claiming that state attorneys general had "reached out to multiple short sellers, seemingly as part of a preliminary investigation into AppLovin," Suppl. ¶ 242; and statements made during AppLovin's November 5, 2025 earnings call that Plaintiffs characterize as alleged "conceal[ment]" of the state of the e-commerce business, Suppl. ¶ 246.

On January 12, 2026, Plaintiffs filed the instant Motion to Supplement concurrently with their Opposition to Defendants' Motion to Dismiss.

## LEGAL STANDARD

Rule 15(d) permits a court, "[o]n motion and reasonable notice," to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The rule "is a tool of judicial economy and convenience." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

Leave to supplement "is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). Rather, "the legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under 15(a)." *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015). Courts apply the same factors that govern motions to amend under Rule 15(a): (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Of these factors, "prejudice to the opposing party [] carries the greatest weight." *Id.*

## ARGUMENT

**I.    THE PROPOSED SUPPLEMENT IS FUTILE**

The Court should deny Plaintiffs' Motion because the proposed supplement cannot cure the fundamental pleading deficiencies identified in Defendants' Motion to Dismiss. "Futility of amendment is analyzed much like a Rule 12(b)(6) motion to dismiss—an amended complaint is futile when it would be subject to dismissal." *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 739 (S.D. Cal. 2020). The PSLRA requires plaintiffs to plead "contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality." *Norfolk Cnty. Ret. Sys. v.*

*Solazyme, Inc.*, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016); *see also In re Read-Rite Corp.*, 335 F.3d 843, 848 (9th Cir. 2003) (PSLRA requires plaintiffs plead specific, particularized facts that give rise to strong, not merely reasonable, inference of scienter).  The proposed supplement contains no such facts.  It does not identify when the alleged practices began, which Defendant knew about them, or how any specific statement was false when made.  Rather than alleging new particularized facts, the supplement simply piles additional layers of speculation on top of the same unreliable Short Reports that form the basis of Plaintiffs' Complaint.  Plaintiffs' proposed supplement, if granted, would be subject to dismissal for the same reasons set forth in Defendants' motion to dismiss: the new allegations do not (and cannot) cure the Complaint's failure to plead falsity, scienter, or loss causation with particularity.  The supplement is thus futile, and Plaintiffs' motion should be denied.  *See In re Netflix, Inc. Sec. Litig.*, 647 F. App'x 813, 817 (9th Cir. 2016) (affirming dismissal with prejudice where second amended complaint "d[id] not raise any new allegedly false or misleading statements" and "was proffered only to 'clarify the legal theory, streamline the complaint, and add additional textual context'").

The proposed supplement identifies four categories of post-Class Period "developments": (1) a news article purporting to report the existence of an SEC probe, Suppl. ¶ 241; (2) a news article purporting to report the existence of state attorney general preliminary inquiries, *id.* ¶ 242; (3) AppLovin's discontinuation of its Array product, *id.* ¶ 244; and (4) statements made during AppLovin's November 5, 2025 earnings call, *id.* ¶ 246.  Plaintiffs contend these facts "corroborate" the Complaint's allegations and "refute the reliability arguments" in the Motion to Dismiss.  Mot. at 6.  But an examination of Plaintiffs' own allegations reveals that each of these "developments" traces directly back to the same Short Reports already challenged in the Motion to Dismiss; as such, they cannot provide the independent corroboration Plaintiffs claim.  According to Plaintiffs' proposed supplement, the Bloomberg article claims that the alleged SEC inquiry is "responding to a whistleblower complaint filed earlier this year, as well as multiple short-seller reports." Suppl. ¶ 241.  The New York Post article claims that state regulators had allegedly "reached out to multiple short sellers." *Id.* ¶ 242.  And the Array shutdown allegedly followed "findings building on and corroborating … work … as previously described in the Culper Report." *Id.* ¶ 244.

Plaintiffs do not allege (nor could they) that any inquiry into AppLovin has been announced—by the SEC or by any state attorney general.  Nor do Plaintiffs allege that AppLovin's alleged discontinuation

of its Array product was made in response to allegations contained in the Short Reports. At best, the Supplement confirms that the Short Reports remain what they were: unverified accusations by financially motivated short sellers who disclaimed the accuracy of their own work. Plaintiffs offer no independent corroboration of any inquiry; their allegations (and their opposition to Defendants' Motion to Dismiss) rely entirely on articles published by Bloomberg and the New York Post. *See id.* ¶¶ 241-42. But "[a]rticles discussing regulators' [alleged] concerns or that they were gearing up for an investigation … really say nothing more than what was obvious to all investors at that time" and "lack foundational reliability." *Premca Extra Income Fund LP v. iRobot Corp.*, 763 F. Supp. 3d 121, 152 (D. Mass. 2025). As such, courts have rejected attempts to "stitch[] together a patchwork of newspaper clippings and proclaim[] the result a tale of securities fraud." *Hershfang v. Citicorp*, 767 F. Supp. 1251, 1259 (S.D.N.Y. 1991); *see also Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300-01 (S.D.N.Y. 2010) (speculative media reports insufficiently particularized). At most, news articles reporting on a regulatory inquiry can show that a defendant had "knowledge of accusations," not that facts existed which are contradictory to the defendant's statements. *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 519 (S.D.N.Y. 2016). And, critically, Plaintiffs do not (and cannot) allege that any purported inquiry has prompted some sort of public announcement, let alone any findings of fact, charges, or ***any*** determination that AppLovin violated the law. Government investigations that have not resulted in findings of wrongdoing do not support an inference of scienter—much less uncorroborated reports of inquiries alleged by the media. *See In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *17 n.6 (D.N.J. Apr. 27, 2017) ("An SEC investigation that has not resulted in charges or any finding of wrongdoing does not support an inference of scienter."); *Bajjuri v. Raytheon Techs. Corp.*, 641 F. Supp. 3d 735, 762 (D. Ariz. 2022) ("[A]n investigation, standing alone, is not enough to raise any inference of scienter, much less a strong inference."). That media articles claim regulators have decided to probe the Short Reports' accusations says nothing about whether those accusations are true. They certainly do not make them reliable.

But even setting aside the Short Reports' unreliability, the supplemental allegations fail on their own terms. Each of the four alleged "developments" Plaintiffs identify occurred after the Class Period and after the challenged statements were made. Post-hoc events cannot establish that a statement was false

when made. *See In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1217 n.14 (N.D. Cal. 2000) ("[E]vents occurring after the alleged class period do not show that the representations made during the class period were false when made."). Here, that certain media articles claim that regulators may be probing AppLovin's data-collection practices says nothing about whether any alleged statement was false at the time it was made. Further, Plaintiffs do not (and cannot) allege that the SEC or any state attorney general has announced an inquiry into AppLovin or accused the Company of any wrongdoing. And Plaintiffs' assertion that the November 5, 2025 earnings call allegedly revealed that AppLovin's e-commerce business was not scaling as Defendants had predicted during the Class Period does nothing to advance their claims. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 389 (9th Cir. 2010) ("[T]he fact that Oracle's forecast turned out to be incorrect does not retroactively make it a misrepresentation.").

The Array shutdown is no different: a company's decision to discontinue a product is not an admission of wrongdoing. *See Plumbers & Pipefitters Loc. Union v. Zimmer*, 673 F. Supp. 2d 718, 744-45 (S.D. Ind. 2009) (defendants' voluntary decision to suspend marketing its product did not show support securities fraud action); *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1076 (W.D. Wash. 2003) (allegations that corporation later discontinued product were insufficient to establish strong inference of scienter). And Dr. Edelman—whose October 2025 short report Plaintiffs claim prompted the shutdown—is the same source already cited throughout the original Short Reports. *See* Compl. ¶¶ 67, 70-72, 75, 78, 82. He is not independent corroboration; he is derivative of the same unreliable material and inherently unreliable as a short seller.

Critically, the Supplement *still* does not contain a single allegation of scienter—it identifies no facts suggesting that any Defendant acted with the intent to deceive or with deliberate recklessness. *See* Defendants' Reply In Support Of Their Motion To Dismiss Amended Complaint at 4-8. In sum, the Supplement is entirely devoid of *any* facts corroborating the Short Reports.

## II.   PLAINTIFFS' PROPOSED SUPPLEMENT PREJUDICES DEFENDANTS

Even if the proposed supplement were not futile, it should be denied because Plaintiffs' tactical maneuvering has caused substantial prejudice to Defendants—the factor that "carries the greatest weight" in the Rule 15 analysis. *Eminence Cap., LLC*, 316 F.3d at 1052.

Plaintiffs argue that "Defendants will suffer no prejudice" because discovery has not begun and Defendants "will have ample opportunity to address these new facts in their reply brief." Mot. at 5-6. But reply briefs are intended to address arguments raised in opposition—not to serve as the first and only opportunity to respond to new factual allegations. *Cf. Herrera v. Florence McClure Women's Corr. Ctr. Facility*, 2024 WL 3459060, at *2 (D. Nev. July 17, 2024) ("A plaintiff 'may not amend [her] allegations through facts raised in opposition to a motion to dismiss.'").

Defendants' Motion to Dismiss addresses the lengthy operative Complaint in detail. Under Plaintiffs' proposed approach, Defendants must now respond to both the Opposition ***and*** a new set of factual allegations in a reply brief with strict page limits. *See Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1177 (E.D. Cal. 2013) (denying motion to supplement and noting that prejudice occurs when the supplement "would diminish the opposing party's ability to respond to the amended pleading" and "appear[s] to 'game' the system").

The prejudice is compounded by the role the supplement plays in Plaintiffs' Opposition. Though the supplemental allegations are not lengthy, they are not peripheral additions. They are referenced in Plaintiffs' scienter and loss causation arguments. Opp. at 23, 25. Yet Defendants had no opportunity to address these allegations in their opening brief. *See generally Alzheimer's Inst. of Am. v. Elan Corp. PLC*, 274 F.R.D. 272, 276 (N.D. Cal. 2011) (denying motion for leave to amend and finding prejudice to the defendant where amendment would require the defendant to incur additional litigation costs due to the amendment injecting new arguments into the case).

Plaintiffs' reliance on the PSLRA's discovery stay to negate prejudice is misplaced. Mot. at 5. The discovery stay exists to protect defendants from the burden of responding to shifting allegations before the adequacy of the complaint is determined. *See* 15 U.S.C. § 78u-4(b)(3)(B). Permitting Plaintiffs to inject new allegations mid-briefing directly undermines this protection. And Plaintiffs' assertion that the supplement is only "four pages," Mot. at 6, similarly misses the point. The new allegations may not be extensive, but they are central to Plaintiffs' opposition to the motion to dismiss. *See* Opp. at 6-7, 23, 25.

The PSLRA's heightened pleading requirements apply with full force here. "If leave to amend complaints alleging securities fraud is liberally granted, then the [PSLRA] has no vitality." *In re Champion Enters., Inc. Sec. Litig.*, 145 F. Supp. 2d 871, 877 (E.D. Mich. 2001); *see also In re Bristol-Myers Squibb*

1  *Sec. Litig.*, 228 F.R.D. 221, 229 (D.N.J. 2005) (denying motion to amend where it would "allow [plaintiff] to make an end run around the requirements of the [PSLRA]" and observing that the court "should not permit parties to become 'moving targets'—confronted with new allegations" after defendants have already engaged in motion practice).  That is precisely what Plaintiffs seek here: to inject new allegations after Defendants have briefed their motion, forcing Defendants to address a moving target.

### III.   PLAINTIFFS' UNDUE DELAY FURTHER COMPOUNDS THE PREJUDICE

"A party unduly delays seeking amendment by failing to seek amendment reasonably promptly after it 'knew or should have known' that amendment was called for." *Fresno Unified*, 980 F. Supp. 2d at 1176 (quoting *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006)).  Contrary to their claim, Plaintiffs did not "promptly move[] to supplement the Complaint at the earliest opportunity in connection with their opposition to Defendants' Motion to Dismiss." Mot. at 4.  All of the events underlying the proposed supplement's allegations became public in October and early November 2025: the Bloomberg articles on October 6 and 15, Suppl. ¶¶ 241, 244; the New York Post article on October 19, *id.* ¶ 242); and the earnings call on November 5, *id.* ¶ 246.  Pursuant to the scheduling order entered on July 10, 2025, Dkt. 46, Defendants did not file their Motion to Dismiss until November 14, 2025—over a month after the first of these events and nearly two weeks after the last of these events.  Plaintiffs thus had over five weeks from the first Bloomberg article to act before Defendants invested substantial resources briefing a motion that addressed the operative Complaint.  They chose not to do so.  Instead, Plaintiffs waited until December 22, 2025 to seek consent, and then waited another three weeks to file the supplement.[1]

"A moving party's inability to acceptably explain its delay may indicate that the delay was undue." *Fresno Unified*, 980 F. Supp. 2d at 1176.  Plaintiffs offer no rationale for their delay.  And given that the facts in Plaintiffs' proposed supplement are heavily featured throughout Plaintiffs' opposition to the motion to dismiss, *e.g.*, Opp. at 23, 25, Plaintiffs cannot credibly claim that they needed time to evaluate whether these developments were material.  Plaintiffs' delay has caused precisely the kind of harm that makes delay undue—it "prejudices the nonmoving party or imposes unwarranted burdens upon the court." *Id.* at 1177.

---

[1]   There is nothing in the Federal Rules or the Local Rules which required Plaintiffs to file their motion for leave to supplement on the same day as their opposition to AppLovin's motion to dismiss.

Had Plaintiffs acted promptly, Defendants could have addressed the supplemental allegations in their opening motion. Instead, Plaintiffs ensured that Defendants would have to address entirely new allegations—allegations that form the backbone of Plaintiffs' Opposition—for the first time in a reply brief. That is not promptness; it is gamesmanship and a strategic ploy to hamstring Defendants in the midst of a pending motion to dismiss.

## IV.    PLAINTIFFS SHOULD NOT BE PERMITTED FURTHER LEAVE TO AMEND

Should the Court grant the Motion to Supplement, it should treat the supplement as Plaintiffs' amendment as a matter of course under Rule 15(a)(1), and Plaintiffs should not be entitled to further leave to amend should the Court grant Defendants' Motion to Dismiss.

Plaintiffs styled their filing as a "supplement" under Rule 15(d) rather than an "amendment" under Rule 15(a) for an obvious reason: to preserve their ability to amend again if the Court grants Defendants' Motion to Dismiss. The Court should not credit Plaintiffs' gamesmanship and permit them to have it both ways. If Plaintiffs wished to add allegations to their Complaint in response to Defendants' Motion to Dismiss, they should have done so through an amendment—and accept that doing so exhausts their opportunity to amend as a matter of right under Rule 15(a)(1).

Plaintiffs have now had the full benefit of Defendants' Motion to Dismiss which identifies myriad deficiencies in the Complaint in detail. In response, Plaintiffs scoured for additional facts and identified the best they could find: uncorroborated news articles claiming the existence of alleged regulatory inquiries that, by Plaintiffs' own admission, originated from the same Short Reports already in the Complaint; a product shutdown—without any evidence to support that the product discontinuation was made in response to allegations contained in the Short Reports; and statements from an earnings call. If these are the most compelling facts Plaintiffs can marshal after seeing Defendants' arguments, further leave to amend would be futile. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (failure to correct deficiencies Second Amended Complaint was "a strong indication that the plaintiffs have no additional facts to plead."); *In re Intel Corp. Sec. Litig.*, 792 F. Supp. 3d 1008, 1024 (N.D. Cal. 2025) (denying leave to amend where complaint relied only on public information and noting that "it is unclear how Plaintiffs could add further particularized facts to satisfy the strict pleading requirement of the PSLRA and Rule 9(b).").

# CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Supplement. Should the Court be inclined to grant the motion, Defendants request that the Court (i) reset the motion to dismiss briefing schedule to allow Defendants to file a new motion to dismiss addressing the supplemented allegations in full; or (ii) treat Plaintiffs' supplement to the Complaint as Plaintiffs' amendment as a matter of course, pursuant to Rule 15(a)(1).

| | | |
|---|---|---|
| 1 | DATED: February 2, 2026 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | By: */s/ Alexander Benjamin Spiro* |
| 4 | | Victoria Blohm Parker (Bar No. 290862) |
| 5 | | vickiparker@quinnemanuel.com<br>50 California Street, 22nd Floor |
| 6 | | San Francisco, California 94111<br>Telephone: (415) 875-6600 |
| 7 | | |
| 8 | | Alexander Benjamin Spiro (pro hac vice)<br>Hope D. Skibitsky (pro hac vice) |
| 9 | | Brenna Nelinson (pro hac vice pending)<br>alexspiro@quinnemanuel.com |
| 10 | | hopeskibitsky@quinnemanuel.com<br>brennanelinson@quinnemanuel.com |
| 11 | | 295 5th Avenue<br>New York, NY 10016 |
| 12 | | Telephone: (212) 849-7000 |
| 13 | | *Attorneys for Defendants* |